ACCEPTED
04-15-00525-CV
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS
12/2/2015 4:11:00 PM
KEITH HOTTLE
CLERK

## CASE NO. 04-15-00525-CV

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
12/2/2015 4:11:00 PM
KEITH E. HOTTLE
Clerk

## IN THE
## FOURTH COURT OF APPEALS
## SAN ANTONIO, TEXAS

### AMF BOWLING CENTERS, INC.
*Appellant*

v.

### RIO VENTURES, LTD., AND RIO CLUB, LLC,
*Appellees*

**Appeal from Cause No. 2015cv03002**
**In the County Court at Law No. 10 Bexar County, Texas**
**Honorable Jason Wolff, Presiding**

## BRIEF FOR APPELLANT

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**
Lee L. Cameron, Jr.
State Bar No. 03675380
lee.cameronjr@wilsonelser.com
Leonard E. Hoffman, III
State Bar No. 09789700
Leonard.Hoffman@wilsonelser.com
Kristina M. Oropeza
State Bar No. 24037353
901 Main Street, Suite 4800
Dallas, Texas 75202
214-698-8000
214-698-1101 (fax)
**ATTORNEYS FOR APPELLANT**
**ORAL ARGUMENT REQUESTED**

2133188v.2

# IDENTITY OF PARTIES AND COUNSEL

In accordance with Tex. R. App. P. 38.2(A)(1)(a), AMF Bowling Centers, Inc. provides the following list of parties and counsel.

**<u>Party:</u>**                                                    **<u>Counsel:</u>**

**<u>Appellant:</u>**
AMF Bowling Centers, Inc.

Lee L. Cameron, Jr.
State Bar No. 03675380
lee.cameronjr@wilsonelser.com
Leonard E. Hoffman, III
State Bar No. 09789700
Leonard.Hoffman@wilsonelser.com
Kristina M. Oropeza
State Bar No. 24037353
Kristina.Oropeza@wilsonelser.com
901 Main Street, Suite 4800
Dallas, Texas 75202
214-698-8000
214-698-1101 (fax)

**<u>Appellees:</u>**
Metropolis Nightclubs I, L.P.
Rio Ventures, Ltd.
Rio Club, LLC

Derick J. Rodgers
State Bar No. 24002857
Brandy Smith
State Bar No. 24057666
Davis, Cedillo & Mendoza, Inc.
755 E. Mulberry Ave., Suite 500
San Antonio, Texas 78212
(210) 822-6666
(210) 822-1151 (fax)
drodgers@lawdcm.com

ii

2133188v.2

# TABLE OF CONTENTS

STATEMENT OF THE CASE .................................................................................. 1

ISSUES PRESENTED ........................................................................................... 3

STATEMENT OF THE FACTS ............................................................................. 4

    A. The Original AMF Sublease, the Metropolis
    Sublease, and the Rio Ventures Sublease .............................................. 4

    B. Proceedings in Harris County District Court ...................................... 5

    C. Proceedings in Bexar County District Court ....................................... 6

STANDARD OF REVIEW .................................................................................... 7

SUMMARY OF THE ARGUMENT ..................................................................... 8

ARGUMENT AND AUTHORITIES ..................................................................... 9

I.    APPELLEES HAVE NO RIGHT TO POSSESS THE
     PREMISES BECAUSE THE PURPORTED LEASES ARE
     INVALID AS A MATTER OF LAW ...................................................... 9

    A. Assuming the Use of "Metropolis, Inc." was a Mere Misnomer,
    the Contracts Are Not Legally Valid Because the Parties Signed
    the Invalid Metropolis Lease *Before* Metropolis Nightclubs I,
    L.P., Existed ......................................................................................... 9

    B. Appellees' Ratification Argument Fails as a Matter of Law ................ 14

iii

II.    BECAUSE THE LEASES ARE INVALID AND POSSESSION OF
       THE PREMISES SHOULD REVERT TO AMF, APPELLEES
       HAVE NO RIGHT TO ATTORNEYS' FEES ............................................. 16


CONCLUSION    ................................................................................................ 16

PRAYER        ................................................................................................ 17

iv

# INDEX OF AUTHORITIES

## Cases

*Camp Mystic, Inc. v. Eastland,*
399 S.W.3d 266 (Tex. App.—San Antonio 2012, no pet.) ............................. 14

*Coinmatch Corp. v. Aspenwood Apt. Corp.,*
417 S.W.3d 909 (Tex. 2013) ........................................................................ 14

*Commonwealth Nat'l Bank v. U.S.,*
573 F. Supp. 881 (N.D. Tex. 1983) .............................................................. 14

*Exxon Corp. v. Emerald Oil & Gas Co.,*
331 S.W.3d 419 (Tex. 2010) .......................................................................... 7

*Flagship Hotel, Ltd. v. City of Galveston,*
117 S.W.3d 552 (Tex. App.—Texarkana 2003, pet. denied) ......................... 15

*HTS Servs., Inc. v. Hallwood Realty Partners, L.P.,*
190 S.W.3d 108 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ............. 11, 12

*In re Hawthorne Townhomes, L.P.,*
282 S.W.3d 131 (Tex. App.—Dallas 2009, no pet.) ........................... 11, 12, 13

*In re The Armand Borel Trust,*
Order No. 09-1129, 2012 WL 6215388 (Cal. Super. 2012) ......................... 14

*Kahn v. Imperial Airport, L.P.,* 308 S.W.3d 432
(Tex. App.—Dallas 2010, no pet.) ............................................................... 11

*Lesieur v. Fryar,* 325 S.W.3d 242
(Tex. App.—San Antonio 2010, pet. denied) .................................................. 7

*Loeffler v. Lyttle Indep. Sch. Dist.,* 211 S.W.3d 331
(Tex. App.—San Antonio 2006, pet. denied) ............................................... 10

2133188v.2

*Payne v. Edmonson*, No. 01-96-00792-CV, 1999 WL 350928, *3
  (Tex. App.—Houston [1st Dist.] June 3, 1999, pet. denied) ........................... 11
*Sun Operating Ltd. P'ship v. Oatman,*
  911 S.W.2d 749 (Tex. App.—San Antonio 1995, writ denied) ...................... 15

*Valence Operating Co. v. Dorsett*, 164 S.W.3d 656 (Tex. 2005) ....................... 8

*WesternGeco, L.L.C. v. Input/Output, Inc.,*
  246 S.W.3d 776 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ........... 11, 12

## Statutes

Tex. Prop. Code § 24.001 ............................................................................. 14

## Rules

Tex. R. App. P. 38.2 ..................................................................................... ii

2133188v.2

## BRIEF FOR APPELLANT

AMF Bowling Centers, Inc. files this Appellant's Brief and asks the Court to reverse the judgment of the County Court, and render judgment and possession of the Premises at issue for AMF Bowling Centers, Inc.

## STATEMENT OF THE CASE

Appellant AMF Bowing Centers, Inc. ("AMF"), as landlord, filed an eviction suit in the Justice of the Peace Court, Precinct 3, Place 3 ("J.P. Court") in Bexar County, Texas, for possession of real property occupied by Metropolis, Inc., Metropolis Nightclubs I, L.P., Rio Ventures, Ltd., and/or Rio Club, LLC. CR: 272-280; App. A. In that eviction suit, AMF successfully argued that as a matter of law leases fraudulently signed on behalf of Metropolis, Inc. did not give a separate and distinct entity known as Metropolis Nightclubs I, L.P.—and, by extension, its sub-tenants Rio Ventures, Ltd. and Rio Club, LLC (the "Rio Defendants")—the right to possession of the premises at 13307-A San Pedro Avenue, San Antonio, Texas 78216 (the "Premises"), which AMF controls as landlord. CR: 14-20, 547; App. B.

1

AMF's position was further supported by an agreed judgment from the 190th Judicial District Court in Harris County declaring that any lease purportedly made on behalf of Metropolis, Inc. concerning the Premises was void ab initio. CR: 264-268; App. C. In addition to the eviction suit and Harris County proceeding, AMF filed a suit in Bexar County District Court requesting injunctive and declaratory relief for various breaches of the lease and related monetary damages.

After the J.P. Court granted AMF's Motion for Summary Disposition and granted possession to AMF, the Rio Defendants appealed to Bexar County Court at Law No. 10. They moved to abate the case because of the suit in Bexar County District Court, and AMF moved to raise the appeal bond and assess occupancy fees. CR: 529-533, 629-634.

The County Court denied both parties' motions regarding abatement and fees, and then ordered that the Rio Defendants retain possession of the Premises even though neither side had filed a motion or presented arguments on that topic. CR: 706, 708, 710. After AMF moved for reconsideration based on due process violations, the County Court vacated the order of possession and heard arguments regarding cross-motions for summary judgment on the possession issue. CR: 734-740, 810-920, 921, 923-964. On August 13, 2015, the County Court granted Appellees' motion for summary judgment, denied AMF's motion for summary judgment, and issued an order for possession in favor of the Rio Defendants despite established legal authority

2

that the leases were invalid or void as a matter of law. CR: 1073, 1075; App. D and E, respectively. This appeal followed. CR: 1076-077.

---

## ISSUES PRESENTED

---

ISSUE NO. 1: The undisputed facts established that Metropolis Nightclubs I, LP did not exist when it allegedly entered into a lease with AMF for possession of the Premises. Can a nonexistent entity enter into a valid contract as a matter of law?

ISSUE NO. 2: Since the undisputed facts established that Metropolis Nightclubs I, LP did not exist when it allegedly entered into a lease with AMF for possession of the Premises, did the trial court err by granting summary judgment and possession of the Premises to Appellees based on the terms of that invalid or void contract?

ISSUE NO. 3: Since Appellees have no right to possession of the Premises as a matter of law, did the County Court err in awarding attorneys' fees?

3

## STATEMENT OF FACTS

### A. The Original AMF Sublease, the Metropolis Sublease, and the Rio Ventures Sublease

There are three relevant lease documents in this case. First, AMF originally subleased the Premises from F.W. Woolworth Co. (which assigned its interest to Woolco, Inc.) in 1989 (the "Original Sublease"). CR: 22-46 (Lease between Bitters/Woolco Partnership, LLP and AMF Bowling Centers, Inc.). This lease was renewed and is effective through June 30, 2022. *Id.*

The second lease document, executed in 2005, specified the parties thereto as AMF and an entity purporting to be "Metropolis, Inc." (the "Invalid Metropolis Lease"). CR: 48-66; App. F. The Invalid Metropolis Lease concerned an attempted lease of the Premises from AMF. *Id.* (Void Sublease between AMF Bowling Centers, Inc. and Metropolis, Inc.). Gil Butnaru, who falsely claimed to represent Metropolis, Inc., signed the Invalid Metropolis Lease agreement for the Premises. CR: 62-63. In connection with that lease, Mr. Butnaru swore in an affidavit that he was the president of Metropolis, Inc. and therefore had authority to enter into the Lease. *Id.* The individuals who misrepresented themselves to be Metropolis, Inc. agreed to use the Premises as a restaurant, bar, nightclub, or for any other lawful purpose. CR: 49.

4

2133188v.2

The third document was executed in 2007 between the party purporting to be Metropolis, Inc. and Rio Ventures, Ltd. ("Rio Ventures"). CR: 73-78; App. G (Void Sublease between Metropolis, Inc. and Rio Ventures, Ltd.). In that lease, a different individual claiming to represent Metropolis, Inc., entered into a sublease for the Premises with Rio Ventures, Ltd (the "Rio Sublease") so that Rio Ventures could occupy the Premises. *Id.* Rio Ventures specifically agreed to comply with all the provisions of the Invalid Metropolis Lease. CR: 74. This attempted lease term extends to May 31, 2019. CR: 79-80. The Rio Sublease included a signature from Samuel Panchevre who, like Mr. Butnaru, falsely represented that he was president of Metropolis, Inc. and was authorized to enter into a lease agreement on its behalf. CR: 78. The Rio Sublease is conditioned on the lawful existence of the Invalid Metropolis Lease; if the Invalid Metropolis Lease terminates, then the Rio Sublease also terminates. CR: 73 ¶ 2.

## B.     Proceedings in Harris County District Court

After repeated lease violations, AMF filed an action in Bexar County District Court in 2014 for a declaration of its rights under the lease. Shortly thereafter, AMF discovered for the first time that Metropolis, Inc. was not aware of the Invalid Metropolis Lease or the Rio Sublease. The signatories to those leases, despite their express representations to the contrary, were not affiliated with Metropolis, Inc., in any way and never had any authority to bind that company. CR: 696-697. Bal

5

2133188v.2

Trivedi, who formed Metropolis, Inc., and has acted as a director or officer for the corporation since its inception, had never heard of the Invalid Metropolis Lease or the Rio Sublease until the litigation against the Rio Defendants began. *Id.*

Immediately after learning of Appellees' years of deceitful representations, AMF filed a declaratory judgment action against Metropolis, Inc. in the 190th Judicial Court for Harris County, Texas. CR: 264-268. That court entered an Agreed Final Judgment on January 27, 2015 that, among other things, declared the Invalid Metropolis Lease void ab initio as between AMF and Metropolis, Inc. *Id.*; App. C (Harris County District Court Judgment). Accordingly, the Agreed Final Judgment **fully and finally <u>disposed</u> of any and all claims to possession of the Premises that <u>Metropolis, Inc.</u> (*i.e.*, the <u>only</u> entity identified on the Invalid Metropolis Lease as the tenant) may have to the Premises.** *Id.*

## C.   Proceedings in Bexar County District Court

Their years of deceitful acts having been uncovered and learning of the District Court's ruling in the Harris County case, Appellees concocted a misnomer argument in an effort to have a court reform the Invalid Metropolis Lease to conveniently remove the name Metropolis, Inc. and insert in its place the name Metropolis Nightclubs I, L.P.  In this regard, on July 9, 2015, the Bexar County District Court also heard a Motion for Partial Summary Judgment against AMF. *See* CR: 963-964. In that Motion, Metropolis Nightclubs I, L.P. argued that the

6

District Court should reform the contracts under a theory of misnomer to reflect its actual name. *See id.* AMF argued, among other things, that reformation would be improper as a matter of law under the undisputed facts of the case. Nevertheless, the District Court disagreed and ruled that Metropolis Nightclubs I, L.P. was the correct name on the Invalid Metropolis Lease, Rio Sublease, and respective extensions, and that the misnomer did not impact their validity or enforceability. CR: 963-964; App. H. **Notably, however, the District Court did not determine what effect Metropolis Nightclubs I, L.P.'s non-existence as of the effective date of the Invalid Metropolis Lease had on the legal validity of that lease.** *Id.*

## STANDARD OF REVIEW

Appellate courts review the granting of a summary judgment de novo. *Exxon Corp. v. Emerald Oil & Gas Co.*, 331 S.W.3d 419, 422 (Tex. 2010); *Lesieur v. Fryar*, 325 S.W.3d 242, 246 (Tex. App.—San Antonio 2010, pet. denied). When parties file cross-motions for summary judgment, as in this case where one of which was granted and the other denied, appellate courts review the summary judgment evidence presented by both sides, determine all questions presented, and if the reviewing court determines that the trial court erred, renders the judgment the

2133188v.2

trial court should have rendered. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005).

Here, there are no disputed material facts and Appellees' legal theories are meritless under Texas law. When the law is properly applied, Appellees cannot recover possession of the Premises as a matter of law and possession should be awarded to AMF. Accordingly, this Court should reverse the trial court's decision to grant Appellees' summary judgment and attorneys' fees, and render judgment and possession of the Premises to AMF.

---

## SUMMARY OF THE ARGUMENT

---

Under well established Texas law, a non-existent entity cannot enter into a contract. The undisputed facts established that Metropolis Nightclubs I, LP. did not exist when its representative allegedly signed the Invalid Metropolis Lease or on the effective date of that contract. As a matter of law, therefore, that lease is invalid or void. Since the Invalid Metropolis Lease was void or invalid as a matter of law, Metropolis Nightclubs I, L.P. had no legal authority or rights to then sublease the Premises to the Rio Defendants.

Additionally, invalid or void contracts, like the Invalid Metropolis Lease, cannot be ratified as a matter of law; one cannot ratify or affirm something that does

8

not exist. Moreover, the undisputed facts established that AMF never attempted to ratify the Invalid Metropolis Lease because it took steps immediately upon learning of Appellees' deceitful misrepresentations to disavow the validity of that contract.

For these reasons, Appellees have no right to possess the Premises and are not entitled to attorneys' fees. AMF respectfully requests this Court reverse the judgment of the County Court and render judgment and possession of the Premises to AMF.

## ARGUMENT AND AUTHORITIES

**I.  APPELLEES HAVE NO RIGHT TO POSSESS THE PREMISES BECAUSE THE PURPORTED LEASES ARE INVALID AS A MATTER OF LAW[1]**

**A.  Assuming the Use of "Metropolis, Inc." was a Mere Misnomer, the Contracts Are Not Legally Valid Because the Parties Signed the Invalid Metropolis Lease *Before* Metropolis Nightclubs I, L.P. Existed**

The undisputed facts established that: (1) on Appellants' motion the Bexar County District Court issued an order in July 2015 reforming the Invalid Metropolis Lease to insert the name Metropolis Nightclubs I, L.P. in place of

---

[1] Germane to Issues Nos. 1 and 2.

9

2133188v.2

Metropolis, Inc.;[2] and (2) **neither Metropolis Nightclubs I, L.P., nor its general partner Metropolis Nightclubs, Inc. existed when the Invalid Metropolis Lease was signed and/or became effective.** The Invalid Metropolis Lease was signed on October 17, 2005 (CR: 63) and had an effective date of October 14, 2005 (CR: 49, art. 3). CR: 48-66; App. F. But Metropolis Nightclubs I, L.P. and its general partner, Metropolis Nightclubs, Inc. were not created until October 27, 2005. CR: 730-731; App. I. Indeed, Appellees' representative, Sam Panchevre, admitted in the court below that Metropolis Nightclubs I, L.P. and its general partner, Metropolis Nightclubs, Inc. were not created until October 27, 2005. CR: 847.

Under black letter, well established and unequivocal Texas law, **a contract entered into by a party who does not exist at the time is <u>invalid or void.</u>** If a party does not exist at the time of contracting, then there can be no "meeting of the minds," and thus no contract. *See Loeffler v. Lyttle Indep. Sch. Dist.,* 211 S.W.3d 331, 346 (Tex. App.—San Antonio 2006, pet. denied) (meeting of the minds required to form a valid contract). **A nonexistent entity cannot enter into a**

---

[2] The undisputed facts established that prior to this July 2015 court order, the name Metropolis Nightclubs I, L.P. <u>did not appear</u> in any of the subject lease documents. Even if the Bexar County District Court's misnomer order is ignored, AMF still must prevail as a matter of law and be awarded possession of the Premises because a Harris County District County entered a final judgment in January 2015 that Metropolis, Inc. (the only party identified as the lessee on the Invalid Metropolis Lease and all purported extensions) has no right to possession of the Premises. CR: 264-268; App. C.

10

contract as a matter of law. *WesternGeco, L.L.C. v. Input/Output, Inc.*, 246 S.W.3d 776, 786 (Tex. App.—Houston [14th Dist.] 2008, no pet.) ("[A] nonexistent entity cannot enter into a contract."); *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 138 (Tex. App.—Dallas 2009, no pet.) ("If one of the parties does not exist, no contract can be formed."); *Kahn v. Imperial Airport, L.P.*, 308 S.W.3d 432, 438 (Tex. App.—Dallas 2010, no pet.)(ruling that an individual cannot sign on behalf of and bind a legal entity that does not exist); *HTS Servs., Inc. v. Hallwood Realty Partners, L.P.*, 190 S.W.3d 108, 114 (Tex. App.—Houston [1st Dist.] 2005, no pet.) ("The Herman Group, L.P. did not exist at the time the parties entered into the original contract; therefore, The Herman Group, L.P. was not, and could not have been, a party to the original contract."); *Payne v. Edmonson*, No. 01-96-00792-CV, 1999 WL 350928, *3 (Tex. App.—Houston [1st Dist.] June 3, 1999, pet. denied) (there was no contract where one party to a contract "did not exist until six years later").

In *WesternGeco LLC*, the court analyzed a contract between Input/Output and Schlumberger to effect a settlement. 246 S.W.3d at 783-84. Under the agreement, Input/Output agreed not to offer a job to any employee of Schlumberger unless two years had elapsed since their employment. *Id.,* at 778-79. This provision purported to apply to future affiliates of Schlumberger as well. *Id.,* at 786. The court concluded that Schlumberger could not bind affiliates that did not

11

exist at the time of the contract as a matter of law: "[B]ecause a non-existent entity cannot enter into a contract, Schlumberger could not and did not bind WesternGeco merely by signing a contract in which Schlumberger states that it is acting on behalf of itself and its future affiliates." *Id.* Thus, the terms of the contract could not apply to a company that did not exist at the time the contract was executed.

Similarly, in *HTS Servs.* the court analyzed whether a contract could be enforced against an entity that was not yet formed when the contract was signed. 190 S.W.3d 108. In that case, a garnishee signed a consulting contract as "Sherri Herman d/b/a The Herman Group." *Id.,* at 113. The other party to the consulting agreement was Hallwood Realty Partners, L.P. *Id.,* at 110. A third party, HTS Services, Inc. obtained a writ of garnishment for any funds that Hallwood Realty Partners, L.P. owed to The Herman Group, L.P. *Id.* Because "The Herman Group, L.P." did not exist at the time the consulting agreement was executed, the court reasoned that it could not have been a party to the agreement and, therefore, could not obtain any funds Hallwood owed to "Sherri Herman d/b/a The Herman Group." *Id.,* at 113 and 114. Thus, the consulting agreement could not be enforced against The Herman Group, L.P. *Id.*

Likewise, the court in *Hawthorne Townhomes* reinforces this approach. 282 S.W. 131. The *Hawthorne Townhomes* court emphasized when a party to the

12

contract does not exist, there can be no meeting of the minds and, thus, a valid contract cannot be formed:

> The formation of a contract requires a meeting of the minds on the contract's essential terms. If one of the parties does not exist, no contract can be formed.

> *Id.,* at 138 (citations omitted).

As noted above, the Bexar County District Court ruled in July 2015 that the leases should be reformed by substituting the name Metropolis Nightclubs I, L.P. for Metropolis, Inc. into the disputed leases. However, the undisputed facts established that neither Metropolis Nightclubs I, L.P., nor its general partner Metropolis Nightclub, Inc., existed when the Invalid Metropolis Lease purportedly became effective on October 14, 2005 or when it was signed on October 17, 2005. Thus, under established Texas law the Invalid Metropolis Lease must be held to be invalid or void as a matter of law.

In stark contrast, here is a list of the cases that support Appellees' argument that a nonexistent entity can enter into a legally valid contract: **None!**

Since the Invalid Metropolis Lease is void or invalid as a matter of law, the Rio Sublease—which is dependent on the validity of the Invalid Metropolis Lease—is also invalid or void as a matter of law. Accordingly, Appellees have no

2133188v.2

rights to possession of the Premises.[3] The County Court erred in holding otherwise. Therefore, the judgment of the County Court should be reversed and judgment for possession should be rendered in favor of AMF.

## B.    Appellees' Ratification Argument Fails as a Matter of Law

In their motion for summary judgment in the court below Appellees argued that AMF ratified the Invalid Metropolis Lease by agreeing to extend it. Appellees are wrong as a matter of law for two independent reasons.

First, if a contract is invalid or void, it has no effect and is a nullity. *Commonwealth Nat'l Bank v. U.S.*, 573 F. Supp. 881, 884 (N.D. Tex. 1983). An invalid or void contract cannot be ratified; attempts to incorporate an invalid or void contract have no legal effect. *See In re The Armand Borel Trust*, Order No. 09-1129, 2012 WL 6215388 (Cal. Super. 2012). Moreover, subsequent amendments or extensions cannot relate back to an invalid or void lease. *See, e.g.,*

---

[3] To prevail in an eviction case, a tenant must show that it has a superior right to actual possession of the relevant premises. *See* Tex. Prop. Code § 24.001. A valid lease is required to transfer the right of possession of the leased premises from landlord to tenant. *See, e.g., Camp Mystic, Inc. v. Eastland*, 399 S.W.3d 266, 276 (Tex. App.—San Antonio 2012, no pet.). But the lease must be a <u>valid</u> contract to transfer the legal right to possess. *See Coinmatch Corp. v. Aspenwood Apt. Corp.*, 417 S.W.3d 909, 920 (Tex. 2013) (eviction is permissible when the tenant has no legal possessory interests). Since the Invalid Metropolis Lease was not a valid contract, the legal right of possession never transferred to Appellees.

14

*Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 560 (Tex. App.—Texarkana 2003, pet. denied).

Second, the undisputed facts establish that AMF never attempted to ratify or recognize the Invalid Metropolis Lease. To ratify an otherwise voidable contract a party must, by conduct, recognize the contract **after** acquiring knowledge of **all relevant facts** which entitled them to rescind. *Sun Operating Ltd. P'ship v. Oatman*, 911 S.W.2d 749, 756 (Tex. App.—San Antonio 1995, writ denied).

Here, AMF immediately sought a declaration of its rights under the relevant leases upon learning Metropolis Nightclubs I, L.P., had misrepresented its corporate identity and status. When AMF learned of the facts entitling it to rescind the contract, it took affirmative steps to disavow the validity of the contract. Immediately after learning of Appellees' years of deceitful representations, AMF filed a declaratory judgment action against Metropolis, Inc. in the 190th Judicial Court for Harris County, Texas. That court entered an Agreed Final Judgment on January 27, 2015 that, among other things, declared the Invalid Metropolis Lease void ab initio as between AMF and Metropolis, Inc. CR: 264-268. The Bexar County District court did not reform the subject leases to replace Metropolis, Inc. with Metropolis Nightclubs I, L.P. until over six months later. CR: 963-964. Thus, the undisputed facts establish that AMF did not act in anyway to recognize the contract, which in turn defeats Appellees' ratification argument as a matter of law.

15

2133188v.2

As such, the Invalid Metropolis Lease should be deemed void. *See Oatman*, 911 S.W.2d at 756. And since the Invalid Metropolis Lease is void, Metropolis Nightclubs I, L.P., cannot incorporate its terms into subsequent subleases or extensions. Thus, there is no legally valid lease, sublease, or extension granting Metropolis Nightclubs I, L.P., the right to possess the Premises.

## II. BECAUSE THE LEASES ARE INVALID AND POSSESSION OF THE PREMISES SHOULD REVERT TO AMF, APPELLEES HAVE NO RIGHT TO ATTORNEYS' FEES[4]

In addition to awarding Appellees possession, the County Court also awarded attorneys' fees in their favor. AMF incorporates all the arguments previously addressed and asks this Court to reverse the award of attorneys' fees because neither Metropolis Nightclubs I, LP nor the Rio Defendants have a legal right to possess the Premises.

## CONCLUSION

The undisputed facts established that Appellees have no lawful right to possession of the Premises. The 190th Judicial District Court in Harris County has entered judgment that the only named tenant to the Invalid Metropolis Lease, Metropolis, Inc., has no legal rights to the Premises. Following that judgment,

---

[4] Germane to Issue No. 3.

2133188v.2

Appellees concocted a misnomer argument and convinced the 408th Judicial Court in Bexar County to replace the name Metropolis, Inc. with Metropolis Nightclubs I, L.P. in the Invalid Metropolis Lease. However, neither Metropolis Nightclubs I, L.P. nor its general partner existed when that lease was signed or on the effective date of that lease. Under established Texas law, therefore, the Invalid Metropolis Lease is invalid—a nonexistent entity cannot enter into a legally binding contract. As a result, neither Metropolis Nightclubs I, L.P. nor its sublessees, the Rio Defendants, have any rights to possession of the Premises.

For these reasons, and as explained in greater detail above, the County Court erred in granting summary judgment and possession for Appellees and by denying possession of the Premises to AMF.

---

## PRAYER

---

AMF respectfully requests this Court to reverse the judgment of the county court granting possession of the Premises and attorneys' fees in favor of Appellees and render judgment and possession of the Premises in favor of AMF along with attorneys' fees.

2133188v.2

Respectfully Submitted,

**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER, LLP**

/s/ *Lee L. Cameron Jr.*
Lee L. Cameron, Jr.
State Bar No. 03675380
lee.cameronjr@wilsonelser.com
Leonard E. Hoffman, III
State Bar No. 09789700
Leonard.Hoffman@wilsonelser.com
Kristina M. Oropeza
State Bar No. 24037353
Bank of America Plaza
901 Main Street, Suite 4800
Dallas, Texas 75202
(214) 698-8000
(214) 698-1101 (*facsimile*)

**ATTORNEYS FOR APPELLANT
AMF BOWLING CENTERS, INC.**

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of December, 2015, a true and correct copy of Appellant's Brief was forwarded to Appellees' Counsel of record.

/s/ *Lee L. Cameron Jr.*
Lee L. Cameron, Jr.

18

CASE NO. 04-15-00525-CV

IN THE
FOURTH COURT OF APPEALS
SAN ANTONIO, TEXAS

AMF BOWLING CENTERS, INC.
*Appellant*

v.

RIO VENTURES, LTD., AND RIO CLUB, LLC,
*Appellees*

Appeal from Cause No. 2015cv03002
In the County Court at Law No. 10 Bexar County, Texas
Honorable Jason Wolff, Presiding

APPENDIX TO BRIEF FOR APPELLANT

Tab A    AMF's Eviction Petition filed in the J.P. Court Case

Tab B    Order Granting AMF's Motion for Summary Disposition in the J.P. Court Case

Tab C    Agreed Final Judgment Entered by the 190th Judicial Court, Harris County, Texas

Tab D    Order Granting Appellees' Motion for Summary Disposition in the County Court at Law Case

Tab E    Order Granting Possession of the Premises to Appellees in the County Court at Law Case

2152699v.1

Tab F        The Invalid Metropolis Lease

Tab G       The Rio Sublease

Tab H       Partial Summary Judgment Order from the 408th Judicial Court, Bexar County, Texas

Tab I        Secretary of State Documents regarding formation of Metropolis Nightclubs I, L.P. and Metropolis Nightclubs, Inc.

2152699v.1

# APPENDIX A

**PETITION: EVICTION CASE**

32E150076

CASE NO. (court use only) _____ IN THE JUSTICE COURT, PCT. 3 BEXAR COUNTY, TEXAS

2015 MAR 16 PM 2: 19

PLAINTIFF: AMF Bowling Centers, Inc.  • ☐ With suit for Rent  Rental Subsidy (if any) $

VS.

Tenant's Portion $

TOTAL MONTHLY RENT $

CC/0

DEFENDANTS: Rio Ventures, Ltd., and Rio Club, LLC

COMPLAINT: Plaintiff (Landlord) hereby complains of the defendant(s) named above for eviction of plaintiff's premises (including storerooms and parking areas) located in the above precinct. Address of the property is:

ADDRESS 13307 San Pedro Ave  UNIT # Suite A  CITY San Antonio  STATE TX ZIP 78256

1. SERVICE OF CITATION: Service is requested on defendants by personal service at home or work or by alternative service as allowed by the Texas Justice Court Rules of Court. Other addresses where the defendant(s) may be served are:
   - Samuel Panchevre, on behalf of Rio Ventures, Ltd and Rio Club, LLC, 16 Carriage Hills, San Antonio, Texas 78257
   - John W. Wood, as registered agent for service for Rio Ventures, Ltd and Rio Club, LLC, 4900 Woodway Drive, Suite 110, Houston, Texas 77056
   - Rio Ventures, Ltd., 1406 Peacock Haven, San Antonio, Texas 78256

2. ☐ Defendant(s) failed to pay rent _____

for the following time period(s):

TOTAL DELINQUENT RENT AS OF DATE OF FILING IS: $
Plaintiff reserves the right to orally amend the amount at trial to include rent due from the date of filing through the date of trial.

3. ☒ OTHER GROUNDS FOR EVICTION/LEASE VIOLATIONS:
Lease Violation (if other than non-paid rent – list lease violations) See attached Grounds for Eviction

4. ☐ HOLDOVER AS GROUNDS FOR EVICTION:
Defendant(s) are unlawfully holding over since they failed to vacate at the end of the rental term or renewal of extension period, which was

5. ☒ NOTICE TO VACATE: Plaintiff has given defendant(s) a written notice to vacate (according to Chapter 24.005 of the Texas Property Code) and demand for possession.
Such notice was delivered on March, 3-4, 2015  and delivered by this method: Fax, CMRRR, hand-delivery (posting on door)

6. ☒ ATTORNEY'S FEES:
PLAINTIFF ☒ is seeking applicable attorney's fees.  Attorney's name, address, and phone & fax numbers are:
Lee L. Cameron, Jr., Esq.; Wilson Elser Moskowitz Edelman & Dicker LLP, 901 Main Street, Suite 4800, Dallas, TX 75202; 214.698.8000 (office) 214.698.1101 (fax)

7. ☐ BOND FOR POSSESSION: If Plaintiff has filed a bond for possession, plaintiff requests: (1) that the amount of plaintiff's bond and defendant's counter bond be set, (2) that plaintiff's bond be approved by the Court, and (3) that proper notices as required by the Texas Justice Court Rules are given to Defendant(s).
REQUEST FOR JUDGMENT: Plaintiff prays that defendant(s) be served with citation and that plaintiff have judgment against defendant(s) for: possession of premises, including removal of defendants and defendants' possessions from the premises, unpaid rent IF set forth above, attorney's fees, court costs, and interest on the above sums at the rate stated in the rental contract, or if not so stated, at the statutory rate for judgments under Civil Statutes Article 5069-1.05.

☒ If you wish to give your consent for the answer and any other motions or pleadings to be sent to your email address, please check this box, and provide your valid email address: lee.cameron@wilsonelser.com

**AMF Bowling Centers, Inc.**
Petitioner's Printed Name
DEFENDANT(S) INFORMATION (if known):

Signature of Plaintiff or Attorney

DATE OF BIRTH: n/a  Address of Plaintiff's Attorney

LAST 3 NUMBERS OF DRIVER LICENSE: n/a  901 Main Street, Suite 4800

LAST 3 NUMBERS OF SOCIAL SECURITY: n/a  Dallas, Texas 75202

DEFENDANTS PHONE NUMBER: 210.822.6666 (Counsel for Defendants) PHONE OF PLAINTIFF'S ATTORNEY/PLAINTIFF: 214.698.8000

Sworn to and subscribed before me this 13th day of March, 2015

CLERK OF THE JUSTICE COURT OR NOTARY

1911913v.1

CINDY LEWIS DANIEL
MY COMMISSION EXPIRES
September 6, 2015

# JUSTICE COURT CIVIL CASE INFORMATION SHEET (4/13)

Cause Number (for clerk use only): 32E500716

## Styled AMF Bowling Centers, Inc. v. Rio Ventures, Ltd., and Rio Club, LLC

(e.g., John Smith v. All American Insurance Co; In re Mary Ann Jones; In the Matter of the Estate of George Jackson)

A civil case information sheet must be completed and submitted when an original petition is filed to initiate a new suit. The information should be the best available at the time of filing. This sheet, required by Rule of Civil Procedure 502, is intended to collect information that will be used for statistical purposes only. It neither replaces nor supplements the filings or service of pleading or other documents as required by law or rule. The sheet does not constitute a discovery request, response, or supplementation, and it is not admissible at that

| 1. Contact information for person completing case information sheet: | | 2. Names of parties in case: |
|---|---|---|
| Name:<br>Lee L. Cameron, Jr. | Telephone:<br>214.698.8000 | Plaintiff(s):<br>AMF Bowling Centers, Inc. |
| Address:<br>901 Main Street, Suite 4800 | Fax:<br>214.698.1101 | |
| City/State/Zip:<br>Dallas/TX/75204 | State Bar No:<br>03675380 | Defendant(s):<br>Rio Ventures, Ltd.<br>Rio Club, LLC |
| Email:<br>ee.Cameron@wilsonelser.com<br>Signature: | | |
| | | [Attach additional page as necessary to list all parties] |

## 3. Indicate case type, or identify the most important issue in the case (select only 1):

| ☐ **Debt Claim:** A debt claim case is a lawsuit brought to recover a debt by an assignee of a claim, a debt collector or collection agency, a financial institution, or a person or entity primarily engaged in the business of lending money at interest. The claim can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any. | ☒ **Eviction:** An eviction case is a lawsuit brought to recover possession of real property, often by a landlord against a tenant. A claim for rent may be joined with an eviction case if the amount of rent due and unpaid is not more than $10,000, excluding statutory interest and court costs but including attorney fees, if any. |
|---|---|
| ☐ **Repair and Remedy:** A repair and remedy case is a lawsuit filed by a residential tenant under Chapter 92, Subchapter B of the Texas Property Code to enforce the landlord's duty to repair or remedy a condition materially affecting the physical health of safety of an ordinary tenant. The relief sought can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any. | ☐ **Small Claims:** A small claims case is a lawsuit brought for the recovery of money damages, civil penalties, personal property, or other relief allowed by law. The claim can be for no more than $10,000, excluding statutory interest and court costs but including attorney fees, if any. |

1911913v.1

273

Instructions: The Service members Civil Relief Act applies to a civil proceeding in the Justice Courts. Before entering a default judgment against an individual defendant, the plaintiff must file with the court an affidavit stating whether or not the defendant is in the military service, showing necessary facts to support the affidavit, or stating that the plaintiff is unable to determine whether or not the defendant is in military service, if that is the case. The requirement for an affidavit may be satisfied by a written, signed document declared to be true under penalty of perjury. If it appears that the defendant is in military service, the court may not enter a judgment until after the court appoints an attorney to represent the defendant. If the court is unable to determine if the defendant is in military service, the court may require plaintiff to file a bond in an amount approved by the court.

A person who makes or uses an affidavit under this Act knowing it to be false, may be fined or imprisoned or both. 50 U.S.C. App. 501 et seq. To obtain certificates of service or non-service under the Service members' Civil Relief Act, you may access the public website: https://www.dmdc.osd.mil/appj/scra/scraHome.do. This website will provide the current active military status of an individual.

## Military Status Affidavit

Case No. **32E1500716**

AMF Bowling Centers, Inc.
Plaintiff
vs.

Rio Ventures, Ltd., Rio Club, LLC
Defendant

§ In the Justice Court of
§ Bexar County, Texas
§
§
§Precinct **3** , Place
§

BEFORE ME, on this day personally appeared Lee L. Cameron, Jr.,
who, under penalty of perjury, stated that the following facts are true:

I am the ☐ Plaintiff ☒ attorney of record for the Plaintiff in this proceeding.
☒Rio Ventures, Ltd. and Rio Club, LLC, Defendants, are not in military service.

☐ _____, Defendant, is in military service.

I know this because Defendants are two corporate entities. They cannot serve in the military.

☐ I am unable to determine whether or not the Defendant is in military service.

Signed on **3/13/15**

Signature
Printed Name: Lee L. Cameron, Jr.
Address: 901 Main Street, Suite 4800
            Dallas, Texas 75204
Telephone: 214.698.8000
Fax: 214.698.1101
E-Mail Address: lee.cameron@wilsonelser.com

THE STATE OF TEXAS §
COUNTY OF BEXAR §

SWORN TO AND SUBSCRIBED BEFORE ME on **13th day of March, 2015.**

Clerk of the Court

NOTARY PUBLIC, State of Texas

CINDY LEWIS DANIEL
MY COMMISSION EXPIRES
September 6, 2015

1911913v.1

274

# PROPERTY BACKGROUND

Plaintiff AMF Bowling Centers, Inc. ("AMF") is the landlord of a retail strip center located at 13307 San Pedro Avenue, San Antonio, Texas 78216 (the "Premises"). The Premises consists of a one story building containing approximately 79,902 square feet of ground floor space and a mezzanine area to the rear containing approximately 10,222 square feet. AMF occupies a portion of the Premises, operating a family-friendly, upscale bowling and family entertainment facility. AMF leases the remaining portions of the property to a variety of reputable tenants, including a beauty salon (Salon Beatriz), a bowling pro shop (The Strike Zone Pro Shop), an auto repair facility (Short's Garage), and a bingo hall (Jackpot Bingo Parlor). Defendants currently occupy a portion of the Premises.

Defendants utilize their portion of the Premises for a night club called Club Rio, which they own and/or operate. Club Rio and AMF's bowling center are adjacent to one another and share a wall which divides the businesses. Recently, AMF discovered that Defendants divided the space for Club Rio into two distinct and wholly separate clubs—Club Rio and Maroc Bar— without the consent of AMF. Maroc Bar is an outdoor nightclub with a swimming pool in the middle of the space.

### THE ALLEGED LANDLORD TENANT RELATIONSHIPS

## A. Original Sublease

On October 1, 1989, Plaintiff AMF entered into a sublease agreement with F. W. Woolworth Co. (the "Original Sublease") to sublet the Premises. Bitters/Woolco Partnership, LLP owns fee simple title to the Premises and obtained F. W. Woolworth Co.'s interest in the Original Sublease (through its successor-in-interest, Woolco, Inc.) by an assignment dated February 19, 2004.

The Original Sublease was scheduled to expire on June 30, 2014. Accordingly, Bitters/WoolCo Partnership, LLP and Plaintiff entered into a new lease for the Premises effective July 1, 2012, set to expire on June 30, 2022 (the "Bowling Center Lease," attached and incorporated herein as Exhibit 1).[1]

Per the terms of the Bowling Center Lease, AMF covenanted to the following, among other things:

- Use the Premises for lawful purposes only;

- Not bring or permit any obscene or pornographic material on the Premises, and to not conduct any obscene, nude, or semi-nude live performances on the Premises; and

---

[1] The Parties amended the Bowling Center Lease extending the terms for one year without materially altering the terms of the Bowling Center Lease.

- Not allow subtenants to bring or permit any obscene or pornographic material on the Premises, and to not conduct any obscene, nude, or semi-nude live performances on the Premises.

## B.     The Void Sublease between AMF and the Alleged Metropolis, Inc.

On October 14, 2005, Plaintiff entered into a three-year sublease agreement with who Plaintiff thought was "Metropolis, Inc. or assigns d/b/a Metropolis" (collectively, "Metropolis") for a portion of the Premises (the "Metropolis Sublease" attached and incorporated herein as Exhibit 2).[2] Specifically, the Metropolis Sublease provided for the lease of the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216, consisting of a one story building containing approximately 13,440 square feet of space and outside fenced area containing approximately 8,200 square feet (described here as the "Club Rio Premises").

The individuals who represented themselves to be Metropolis, Inc. promised to use the Club Rio Premises "as a Restaurant, Bar or Nightclub, or for any other *lawful* purpose approved by [AMF Bowling Centers, Inc.] in writing." Ex. 2, art. 3. Furthermore, the individuals who represented themselves to be Metropolis, Inc. promised to:

- Keep the Club Rio Premises clean at its own expense and to remove all refuse from the Club Rio Premises;

- Refrain from bringing or permitting any obscene or pornographic material on the Club Rio Premises and not conduct any obscene, nude, or semi-nude live performances on the Club Rio Premises;

- Not use, suffer, or permit to be used, the Club Rio Premises in violation of any restrictions affecting the Club Rio Premises, including the prohibitions against unlawful activity and obscene or pornographic material on the Club Rio Premises or conduct any obscene, nude, or semi-nude live performances on the Club Rio Premises; and

- Not do anything or suffer or permit to be done anything in or about the Club Rio Premises which would violate any covenants made by Plaintiff in the Bowling Center Lease.

Ex. 2. The term of the Metropolis Sublease was extended to May 31, 2019 by AMF's prior owner.

---

[2] The alleged parties extended the terms of the Metropolis Sublease without materially altering the terms of the Metropolis Sublease.

## C.   Sublease between Metropolis and Rio Ventures, Ltd.

On March 6, 2007, the alleged Metropolis and Rio Ventures, Ltd. ("Rio Ventures") entered into a seven-year sublease agreement for the Club Rio Premises (the "Rio Ventures Sublease," attached and incorporated herein as Exhibit 3).[3] Rio Ventures agreed to limit their use of the Club Rio Premises to the use prescribed in the Metropolis Sublease. Ex. 3, ¶ 4. Furthermore, Rio Ventures agreed to comply with all provisions of the Metropolis Sublease. Ex. 3, ¶ 4.[4] Moreover, Rio Ventures agreed to be bound by the Metropolis Lease and to assume the same role and perform all obligations of Metropolis in the Metropolis Lease as benefiting Plaintiff. Specifically, Rio Ventures agreed it would not:

- Create a nuisance;

- Interfere with any other tenant's normal business operations or AMF's management of the building where the Premises are located;

- Permit any waste; and

- Use the Club Rio Premises in any way that is extrahazardous, would increase insurance premiums, or would void insurance on the building where the Premises are located.

Ex. 3, ¶ 7. The term of the Rio Ventures Sublease was extended to May 31, 2019 by AMF's prior owner.

## GROUNDS FOR EVICTION

### THE METROPOLIS SUBLEASE IS VOID

Defendants' have no right to possession of the Club Rio Premises because the Metropolis Sublease is void. Defendants fraudulently represented that they had authority to enter a lease agreement on behalf of Metropolis, Inc. In fact, Metropolis, Inc. denied that it has ever entered a lease agreement for the subject property. *See* Exhibit 4, Affidavit of Bal Trivedi. On January 27, 2015, the 190th Judicial District Court in Harris County, Texas, entered judgment declaring that no valid lease agreement exists between AMF and Metropolis, Inc., and that any purported

---

[3] The alleged parties extended the terms of the Rio Ventures Sublease without materially altering the terms of the Rio Ventures Sublease.

[4] Because Rio Ventures assumed the obligations contained in the Metropolis Sublease, Rio Ventures is liable to Plaintiff for breach of covenants contained therein. *Amco Trust, Inc. v. Naylor*, 317 S.W.2d 47, 50 (Tex. 1958); *Manges v. Willoughby*, 505 S.W.2d 379, 384 (Tex. Civ. App.—San Antonio 1974, writ ref'd n.r.e.); *Jones v. El Paso Natural Gas Products Co.*, 391 S.W.2d 748, 754 (Tex. Civ. App.—Austin 1965, writ ref'd n.r.e.). Furthermore, "a third party may enforce a contract it did not sign when the parties to the contract entered the agreement with the clear and express intention of directly benefiting the third party." *Tawes v. Barnes*, 340 S.W.3d 419. Here, the Rio Ventures Sublease was expressly intended to directly benefit Plaintiff; thus, Plaintiff can also enforce the provisions set forth in the Rio Ventures Sublease against Rio Ventures.

---

lease agreement between AMF and Metropolis, Inc. is void ab initio. *See* Exhibit 5, Agreed Final Judgment. The sublease agreement Defendants purported to enter into on behalf of Metropolis, Inc. is void based Defendants' fraudulent acts. Furthermore, the 190th Judicial District Court entered judgment declaring that any sublease agreement of the Club Rio Premises between Metropolis, Inc. and Rio Ventures, Ltd. or Rio Club, LLC is void ab initio. Because Rio Ventures, Ltd. and Rio Club, LLC's right of possession is premised on a valid sublease agreement between AMF and Metropolis, Inc., and because there is no valid sublease agreement between either AMF and Metropolis, Inc., or Metropolis, Inc. and Rio Ventures, Ltd. and Rio Club LLC, Defendants' have no right of possession to the Club Rio Premises. Accordingly, eviction is proper under the Texas Property Code.

**DEFENDANTS' BREACHES OF THE SUBLEASES**
**(ASSUMING THE METROPOLIS SUBLEASE IS VALID)**

**A.    Unlawful Purpose/Illegal Acts**

Assuming, *arguendo*, that the Metropolis Sublease is valid, Defendants agreed to use the Club Rio Premises as a restaurant, bar, or nightclub or any other lawful purpose approved by AMF in writing. Instead, upon information and belief, the Club Rio Premises have become a safe-haven for pervasive underage drinking, illegal drug use, public sexual activity, violence, armed robbery, and theft. Defendants regularly serve and/or allow minors to consume alcoholic beverages both inside Club Rio's doors and in the shared common parking lot, in violation of the laws relating to drinking age limits and open containers, and in violation of the Metropolis Lease and Rio Ventures Lease. Even more, Defendants' patrons regularly use illicit drugs openly in Club Rio and in the shared parking lot, assault one another in the parking lot and within the Club Rio, commit theft (ranging from theft of purses to cars to violent robberies at knife-point) in the parking lot and within Club Rio, carry concealed weapons in the parking lot and within Club Rio, and engage in public sexual activities in the parking lot. Each of these unruly behaviors violates state law as well as city code, thereby violating all lease covenants concerning illegal activity. *See* Exs. 1, 2, & 3. Accordingly, the Club Rio Premises create a dangerous condition that attracts criminal misconduct and makes such conduct an unreasonable and foreseeable risk of harm to all the tenants' invitees.

Further problematic, Maroc Bar is operating without a Certificate of Occupancy and without a license to distribute and sell alcohol. Pursuant to various codes and regulations, all businesses are required to have a Certificate of Occupancy to conduct business within the City of San Antonio. This requirement is mandatory in order to maintain code compliance and safety. Likewise, the Texas Alcoholic Beverage Code requires that clubs, such as Maroc Bar, must obtain proper licenses before they can sell alcohol to the public. Maroc Bar's failure to maintain a liquor license violates city ordinance and sections 11.39(b)(3) and 61.05 of the Texas Alcoholic Beverage Code. Maroc Bar's failure to obtain and/or maintain a Certificate of Occupancy and the appropriate TABC licenses is a violation of numerous codes and regulations and thereby violates the lease covenants concerning illegal activity addressed in all the lease agreements governing the Premises. *See* Exs. 1, 2, & 3.

Defendants have also violated Section 15-190 of Article VIII of the San Antonio Municipal Code, which requires an operator of a semipublic swimming pool to have a license for the pool, by failing to maintain a requisite license. Upon information and belief, Defendants have not obtained the required license. In addition to not possessing and maintaining a license for the semipublic swimming pool, Defendants operate the swimming pool in a dangerous, unhygienic and unsafe manner contrary to public health and safety, in violation of the subleases and in violation of several municipal and state statutes, including San Antonio Code of Ordinances, Chapter 15, Article VIII, Sec 15-187 [Responsible for knowledge of all rules], 15-188 [Compliance with ADA], 15-194 [Intoxication; communicable disease], 15-197 [Safety equipment], and Texas Administrative Code, Title 25, Part I, Chapter 265, Subchapter L, Rule 265.202 [Food, Beverages, and Containers at Post-10/01/99 and Pre-10/01/99 Pools and Spas]. Accordingly, Defendants are engaging in unlawful activity by operating the semipublic pool in Maroc Bar.

Furthermore, upon information and belief, Defendants knowingly permit its patrons to leave the Club Rio Premises with liquor purchased at the premises in violation of several Texas statutes including Tex. Alcoholic Beverage Code Ann. § 28.10 ["A mixed beverage permittee may not permit any person to take any alcoholic beverage purchased on the licensed premises from the premises where sold"] and facilitate public intoxication within and outside the shared parking lot in violation of Texas public intoxication and safety laws including Tex. Penal Code Ann. §§ 49.031, 49.02, 49.04, and Tex. Alcoholic Beverage Code § 101.75.

B.      Obscene/Pornographic Behavior

Additionally, upon information and belief, Defendants encourage and/or permit lewd, obscene, and pornographic behavior inside Club Rio and outside in the parking lot. Specifically, Defendants encourage female patrons to dress in scantily clad attire by hosting underwear parties and foam parties. The parking lot is a literal breeding ground for Club Rio patrons which engage in lewd behavior. Tenants on the Premises have found used condoms in the parking lot while some have been solicited by prostitutes. Defendants regularly have go-go dancers performing in next to no clothing. Additionally, Defendants allow the pool to be used and have in fact recorded videos of females in skimpy, two-piece bathing suits fondling one another which is used as promotional material. Defendants also advertise for "Rio Run Saturdays" with "selfies" of females, some not wearing tops. Such conduct violates the prohibition against obscene, lewd, semi-nude activities and pornographic material, and constitutes a breach of the lease covenants. *See* Exs. 1 & 2.

## C. Trash

Upon information and belief, Defendants have further failed to maintain the Club Rio Premises in accordance with the Metropolis Sublease and the Rio Ventures Sublease regarding the cleanliness of the Premises. Defendants' patrons regularly trash the shared parking lot, and Defendants wholly fail to even attempt to clean up any of the mess. After the weekend, or a weeknight in which Club Rio operates, the parking lot and sidewalks are littered with broken glass, beer, wine, and liquor bottles, beer cans, condoms, clothing, and cigarette buds. AMF is left to clean up Defendants' constant mess since Defendants refuse to clean their patrons' mess. Defendants' littering is a violation of law and a breach of the lease covenants.

## D. Pool

Upon information and belief, Defendants allow patrons to use the pool. As stated, promotional videos show patrons in the pool in little clothing with alcoholic drinks and without an on-duty lifeguard. Naturally, the pool becomes a cesspool of alcohol, sweat, and other bodily fluids. Without permission from AMF, Defendants drains the pool directly in the parking lot, flooding the parking lot with the stench of chlorine and other chemicals. Such actions constitute violations of the lease covenants and it creates a public nuisance.

## E. Signage

Upon information and belief, the parties to the void Metropolis Lease negotiated and agreed that the tenant would not place any signage "or other thing of any kind" on the property without the prior *written* consent of the landlord (*i.e.*, Plaintiff). Defendants have violated the void Metropolis Lease and the Rio Ventures Sublease by placing signage and other items on the Club Rio Premises without AMF's prior written consent. Defendants' signage and other items are a direct breach of the lease covenants.

# APPENDIX B

## CAUSE NO. 32E1500716

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC.,<br>Plaintiff, | ) | JUSTICE OF THE PEACE COURT |
| | ) | |
| v. | ) | |
| | ) | PRECINCT 3, PLACE 2 |
| | ) | |
| RIO VENTURES, LTD.,<br>And RIO CLUB, LLC.,<br>Defendants. | ) | |
| | ) | BEXAR COUNTY, TEXAS |

### ORDER

On this day, came on to be considered AMF Bowling Centers, Inc.'s Motion for Summary Disposition, after considering the motion and arguments of counsel, the Court finds that AMF Bowling Centers, Inc.'s Motion for Summary Disposition should be GRANTED.

It is, therefore, ORDERED that AMF Bowling Centers, Inc.'s Motion for Summary Disposition is hereby GRANTED.

SIGNED this  23rd  day of  April ,2015.

_____
PRESIDING JUDGE

Appeal bond set at $10,000.00.

1930394v.1

*PAGE SOLO*

# APPENDIX C

1/14/2015 8:46:16 AM
Chris Daniel - District Clerk
Harris County
Envelope No: 3759162
By: MCNEAL, ARIONNE

CAUSE NO. 2015-01499

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC., | § | IN THE DISTRICT COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | 190TH JUDICIAL DISTRICT |
| | § | |
| METROPOLIS, INC., | § | |
| | § | |
| Defendant. | § | HARRIS COUNTY, TEXAS |

## AGREED FINAL JUDGMENT

This case came before the Court for a final adjudication. All parties appeared or waived appearance, announced ready for trial or waived announcement, waived a trial by jury, and announced that they had settled this case, subject to the Court's entry of this Agreed Final Judgment. After reviewing the pleadings on file herein, evidence admitted and being otherwise fully apprised, the Court finds the following:

Metropolis, Inc. is a domestic For-Profit Corporation organized under the laws of Texas.

Metropolis, Inc. has been managed and/or operated by Bal Trivedi since 2002 as represented by Bal Trivedi and reflected by public information reports filed with the Texas Secretary of State.

Metropolis, Inc. never entered into any agreements with AMF Bowling Centers, Inc. or any of its associated entities.

Metropolis, Inc. never entered into any sublease agreements with AMF Bowling Centers, Inc. or any of its associated entities for the sublease of the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the lease property at issue in this matter.

RECORDER'S MEMORANDUM
This instrument is of poor quality
at the time of imaging

AGREED FINAL JUDGMENT – Page 1
1881185v.1

264

Metropolis, Inc. never authorized anyone to enter into any sublease agreements on its behalf for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the lease property at issue in this matter.

Metropolis, Inc. never entered into any agreements with Rio Ventures, Ltd. or any of its associated entities.

Metropolis, Inc. never entered into any sublease agreements with Rio Ventures, Ltd. or any of its associated entities for the sublease of the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the lease property at issue in this matter.

Metropolis, Inc. never authorized anyone to enter into any sublease agreements on its behalf to lease the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216 to Rio Ventures, Ltd. or any other party, the lease property at issue in this matter.

Metropolis, Inc. never requested AMF Bowling Centers, Inc. and/or its associated entities to consent to a sublease for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the lease property at issue in this matter.

Metropolis, Inc. never consented to or ratified any sublease agreements entered into for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the lease property at issue in this matter.

To the extent that Metropolis, Inc. is a party to any sublease agreements for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, Metropolis, Inc. hereby terminates any and all sublease agreements as of Monday, January 12, 2015, and the same shall be void ab initio.

to the extent that AMF Bowling Centers, Inc. or any of its associated entities are parties to any sublease agreements with Metropolis, Inc. for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, AMF Bowling Centers, Inc. and/or its associated entities accept Metropolis, Inc.'s termination of the sublease agreements and the same shall be void ab initio.

For all these reasons, the Agreed Final Judgment should be entered. It is hereby

ADJUDGED AND DECREED that Metropolis, Inc. never entered into any sublease agreements with AMF Bowling Centers, Inc., or any of its associated entities, for the premises

known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216.

ADJUDGED AND DECREED that Metropolis, Inc. does not have any rights, interests or obligations under any sublease agreements ever executed with AMF Bowling Centers, Inc., or any of its associated entities, for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216.

ADJUDGED AND DECREED that to the extent any sublease agreement exists between Metropolis, Inc. and AMF Bowling Centers, Inc., or any of its associated entities, for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216, the agreement is void ab initio and is also terminated without further force and effect.

ADJUDGED AND DECREED that Metropolis, Inc. did not enter into any sublease agreements with Rio Ventures, Ltd., or any of its associated entities, for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216.

ADJUDGED AND DECREED that Metropolis, Inc. does not have any rights, interests or obligations under any sublease agreements ever executed with Rio Ventures, Ltd., or any of its associated entities, for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216.

ADJUDGED AND DECREED that to the extent any sublease agreement exists between Metropolis, Inc. and Rio Ventures, Ltd., or any of its associated entities, for the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and/or 13307 San Pedro Avenue,

Certified Document Number: 63997176 - Page 3 of 4

ADJUDGED AND DECREED that each party will bear its own costs, including attorneys' fees, incurred in this lawsuit It is further

ORDERED, ADJUDGED AND DECREED by the Court that this Judgment is final, disposes of all claims and parties, is appealable and that all other relief not expressly granted in this Agreed Final Judgment is denied. This Judgment disposes of all claims and all parties.

Signed this 27 of January 2015.

JUDGE PRESIDING

AGREED AS TO SUBSTANCE AND FORM:

Lee L. Cameron, Jr.
Counsel for Plaintiff
AMF Bowling Centers, Inc.

Bal Trivedi
Counsel for Defendant
Metropolis, Inc.

AGREED FINAL JUDGMENT – Page 4
1878606v 2

267



I, Chris Daniel, District Clerk of Harris County, Texas certify that this is a true and correct copy of the original record filed and or recorded in my office, electronically or hard copy, as it appears on this date.
Witness my official hand and seal of office this   March 5, 2015

Certified Document Number:      63997176

Chris Daniel, DISTRICT CLERK
HARRIS COUNTY, TEXAS

**In accordance with Texas Government Code 406.013 electronically transmitted authenticated documents are valid. If there is a question regarding the validity of this document and or seal please e-mail support@hcdistrictclerk.com**

268

# APPENDIX D

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC., | § | IN THE COUNTY COURT |
| Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 10 |
| | § | |
| RIO VENTURES, LTD., and | § | |
| RIO CLUB, L.L.C., | § | |
| Defendants | § | BEXAR COUNTY, TEXAS |

## ORDER ON DEFENDANTS' MOTION FOR SUMMARY DISPOSITION

On August 13, 2015 Defendants presented their Motion for Summary Disposition to the Court. Upon due consideration of the Motion, the evidence presented at the hearing, the applicable legal authorities, and the arguments of counsel, the Court finds that the relief requested should be GRANTED.

IT IS THEREFORE, ORDERED, ADJUDGED AND DECREED that Rio Ventures, Ltd. and Rio Club, L.L.C. are entitled to possession of the Premises.

THIS IS A FINAL ORDER.

SIGNED _____8-13-15_____

_____
Judge Presiding

# APPENDIX E

**CAUSE NO. 2015 CV 03002**

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC., | § | IN THE COUNTY COURT |
|     Plaintiff, | § | |
| | § | |
| v. | § | AT LAW NO. 15 |
| | § | |
| RIO VENTURES, LTD., and | § | |
| RIO CLUB, L.L.C., | § | |
|     Defendants | § | BEXAR COUNTY, TEXAS |

## ORDER FOR POSSESSION

On August 13, 2015, the Court considered the *de novo* appeal of the forcible entry and detainer appeal of the above captioned matter from the Justice Court Precinct 3, Place 2, Bexar County, Texas, Cause No. 32-E-15-00716. Upon due consideration of the papers on file, the evidence presented, the applicable legal authorities, and the arguments of counsel, the Court finds that possession of the demised premises, 13307-A San Pedro Ave, San Antonio, Texas 78216 (the "Premises") be awarded to Defendants Rio Ventures, Ltd., and Rio Club, L.L.C. The misnomer of Metropolis Nightclubs I, L.P. on the Lease, Sublease, Metropolis Extension, and Rio Ventures Extension does not impact the validity or enforceability of the Lease, Sublease, Metropolis Extension, or Rio Ventures Extension.

IT IS THEREFORE, ORDERED, ADJUDGED, AND DECREED that judgment for possession of the Premises is awarded in favor of Rio Ventures, Ltd., and Rio Club, L.L.C.; and

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the bond shall be relinquished and discharged to Rio Ventures, Ltd., and Rio Club, L.L.C.;

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that all writs and processes for the enforcement of this Order may issue as necessary.

SIGNED    8-13-15

_____
JUDGE PRESIDING

**ORDER**                                            **PAGE 1 OF 1**

# APPENDIX F

LANDLORD:      AMF BOWLING CENTERS, INC.

TENANT:       Metropolis, Inc. or assigns, d/b/a Metropolis

LOCATION:      13307-A SAN PEDRO AVE.
                    SAN ANTONIO, TEXAS

## SUBLEASE AGREEMENT
## TABLE OF CONTENTS

| | | |
|---|---|---|
| Article 1 | Parties | 1 |
| Article 2 | Premises | 1 |
| Article 3 | Term and Use | 1 |
| Article 4 | Possession | 1 |
| Article 5 | Rental | 2 |
| Article 6 | Title | 2 |
| Article 7 | Alterations | 3 |
| Article 8 | Removal of Chattels | 3 |
| Article 9 | Compliance for Tenant's Account | 3 |
| Article 10 | Utilities | 4 |
| Article 11 | Assignments, Subletting & Discontinuance of Operation | 4 |
| Article 12 | Repairs | 5 |
| Article 13 | Damage by Fire | 5 |
| Article 14 | Indemnity | 6 |
| Article 15 | Regulations | 6 |
| Article 16 | Eminent Domain | 7 |
| Article 17 | Default | 7 |
| Article 18 | Notice of Termination | 8 |
| Article 19 | Right of Entry | 8 |
| Article 20 | Reletting After Tenant's Default | 8 |
| Article 21 | Notices | 9 |
| Article 22 | Waiver | 9 |
| Article 23 | General Provisions | 10 |
| Article 24 | Mechanic's Lien | 11 |
| Article 25 | Common Facilities | 11 |
| Article 26 | Real Estate Commissions | 12 |
| Article 27 | Occupancy and Rental Taxes | 12 |
| Article 28 | Real Estate Taxes | 12 |
| Article 29 | Signs | 12 |
| Article 30 | Contingencies | 13 |
| Article 31 | Security Deposit | 13 |
| Article 32 | Renewal Option | 14 |
| Article 33 | Landlord Fixtures and Equipment | 14 |

48

## PARTIES

ART. 1.　This lease, made in quadruplicate, the 14th day of October 2005, by and between AMF BOWLING CENTERS, INC., a corporation organized and existing under the laws of the Commonwealth of Virginia, having its principal place of business at 8100 AMF Drive, Mechanicsville, Virginia 23111, hereinafter referred to as "Landlord", and Metropolis, Inc. or assigns d/b/a Metropolis a limited liability company, organized and existing under the laws of the State of Texas, hereinafter referred to as "Tenant".

## WITNESSETH:

## PREMISES

ART. 2.　The Landlord does demise and let unto the Tenant and the Tenant does lease and take from the Landlord for the term and upon the terms and conditions set forth in this lease the premises known as 13307-A San Pedro Avenue, San Antonio, Texas 78216 and consisting of a one story building containing approximately 13,440 square feet of space and outside fenced area containing approximately 8,200 square feet as more particularly shown on Exhibit A attached hereto and made a part hereof (the "Premises"), together with a license to use as and to the extent that the same presently exist subject, however, to the provisions of ART. 25 hereof, all Common Facilities, including parking areas and all streets, service drives and sidewalks shown on Exhibit B attached hereto and made a part hereof within the area described as "Entire Premises".

## TERM OF USE

ART. 3.　To have and to hold the same for the term (subject to Art. 4 and Art. 30 hereof) to commence on October 14, 2005 and to end on the 30th day of September, 2008 at Midnight, unless sooner terminated as herein provided, and for any exercised option periods as specified in ART. 32 hereof. Said Premises to be used as a Restaurant, Bar or Nightclub or for any other lawful purpose approved by Landlord in writing, whose approval will not be unreasonably withheld, and except as specifically limited in Article 11 hereof.

## POSSESSION

ART. 4.　The Tenant accepts the building, improvements, and mechanical systems in the Premises in their present condition. The Tenant agrees to deliver to the Landlord physical possession of the Premises, upon the termination of the term hereof, or any extensions thereof, free and clear of all tenants and occupants and the rights of either, in good condition, reasonable wear and tear excepted. Tenant shall keep the Premises clean at its own expense, and will remove all refuse from the Premises. Tenant shall not burn any materials or rubbish of any description upon the Premises. Tenant agrees to

49

keep all accumulated rubbish in covered containers and to have same removed regularly. In the event Tenant fails to keep the Premises and other portions heretofore described in the proper condition Landlord may cause the same to be done for and on account of Tenant and Tenant hereby agrees to pay the expense thereof on demand as additional rent.

RENTAL

ART. 5.     The Tenant agrees to pay to the Landlord the guaranteed annual rental without prior demand, in equal monthly installments based on the rental schedule below, on the first day of each and every month during the term hereof for the current calendar month, commencing October 14, 2005; provided, however that the monthly rental due and payable for the period October 14, 2005 through November 30, 2005 shall be $0 and the monthly rental for the month of December 2005 shall be paid in advance on the date this lease is executed. The aforesaid payments of rent are to be made to the Landlord by delivery of the funds to the Center Manager for AMF Country Lanes, 13307 San Pedro Avenue, San Antonio, Texas, or to such other place as shall be designated by Landlord in writing at least ten (10) days prior to the next ensuing rent payment date.

RENTAL SCHEDULE

October 14, 2005 thru November 30, 2005                    $0 Mo.
December 1, 2005 thru September 30, 2006     -

Mo.

October 1, 2006 thru September 30, 2007     -

Mo.

October 1, 2007 thru September 30, 2008     -

Mo.

If any monthly installment is not paid by the fifth (5th) day after the due date thereof, Tenant shall also pay, in addition to the monthly rental installment, a late fee equal to five percent (5%) of such monthly rental installment.

TITLE

ART. 6.     The Landlord herein is not the owner of the Premises but holds possession of same by virtue of the following lease agreement (herein referred to as the "Overlease"):

Sublease dated October 1, 1989 by and between F.W. WOOLWORTH CO., as landlord, hereinafter referred to as "Overlandlord" and AMF BOWLING CENTERS, INC., as tenant, a facsimile of which shall be attached to this lease for reference and other purposes relating to this lease.

The Tenant agrees that it will not do (or suffer or permit to be done) anything in or about the Premises or in connection therewith which violates any of the covenants made by the Landlord as tenant in said Overlease. The

50

Landlord agrees that the Tenant, upon paying the rent and performing all of the covenants of this lease, may quietly hold and enjoy the Premises during the term hereof, free from hindrance, or molestation by the Landlord, but subject however, to the Overlease and all mortgages, liens, restrictions and encumbrances affecting said Premises.

The covenants of this lease shall not be binding upon AMF BOWLING CENTERS, INC. if it shall for any reason cease to be the holder of the said Overlease, provided its successor assumes the obligations of Landlord under this lease, including the covenant of quiet enjoyment.

## ALTERATIONS

ART. 7.    The Tenant agrees that it will not without first obtaining the written consent of the Landlord make any structural or non-structural changes to the Premises. The Tenant agrees to pay the entire cost of all prior approved changes and alterations. Landlord hereby agrees that consent for Tenant to make alterations shall not be unreasonably withheld. In addition, Tenant hereby agrees to invest at least $100,000 in refurbishments to the Premises within the initial ninety (90) days of the term of the lease, and to promptly thereafter provide Landlord with copies of all paid invoices and lien releases applicable to the associated refurbishments. Tenant shall not finance the cost of any such refurbishment with any third party debt secured by the Premises or any related refurbishments.

The Tenant agrees that all changes and alterations made by it to the Premises shall be made in a good and workmanlike manner in accordance with plans and specifications submitted to and approved by Landlord, and in compliance with all federal, state or municipal laws and ordinances and the rules and regulations of any department or division thereof. The Tenant also agrees that prior to the making of any changes or alterations to the Premises, it will procure at its own expense and maintain and keep in force: Alterations riders on the public liability insurance policies described in ART. 14 hereof protecting the Landlord against loss or liability during the making of such changes or alterations.

In the event that (x) the total cost of any alterations to be performed at any time exceeds $10,000.00 and (y) such alterations are being performed by third parties (rather than persons associated with Tenant), Tenant shall provide Landlord with either lien releases evidencing payment of all work performed on a monthly basis for all work performed during such month or a completion bond payable in the event of default to AMF Bowling Centers, Inc. in an amount equal to the cost of the changes or alterations from a bonding company licensed by the State of Texas and acceptable to Landlord. Any such completion bond shall be delivered to the Landlord prior to the commencement of any changes or alterations to the Premises.

## REMOVAL OF CHATTELS

51

ART. 8. In the event the Tenant shall not be in default under the terms and provisions of this lease, the Tenant may, prior to the termination thereof, remove the Tenant's chattels, fixtures and personal property from the Premises provided that the Tenant shall immediately repair, at Tenant's sole expense, any and all damage done to the Premises by such removal.

## COMPLIANCE FOR TENANT'S ACCOUNT

ART. 9. Anything herein contained to the contrary notwithstanding, the Tenant agrees that if the Tenant shall be in default in performing any of the terms, covenants, conditions or provisions of this lease on the Tenant's part to be performed, except the covenant concerning the payment of rent, and if the Tenant shall not have cured such default within thirty (30) days after receipt of written notice from the Landlord, the Landlord, if it so elects, may enter the Premises for the purpose of performing the same for the account of the Tenant and any amount paid or expenses or liabilities incurred by the Landlord in the performance of same, shall be deemed additional rent and shall be paid by the Tenant to the Landlord on the first day of the following calendar month.

## UTILITIES

ART. 10. Landlord agrees to provide, at its sole expense, all utility services used on the Premises. Utilities to be only water, electric and or gas. The foregoing notwithstanding, any interruption in utility service shall not constitute an eviction or disturbance of the Tenant's quiet enjoyment of the Premises and, unless the same results from Landlord's negligence or intentional act, no damages or rent abatement shall be due Tenant from Landlord.

## ASSIGNMENTS, SUBLETTING, DISCONTINUANCE OF OPERATION

ART. 11. The Tenant shall not assign, sublease, mortgage, pledge, or encumber this lease without the prior written consent of the Landlord, which consent, in the case of any proposed sublease, shall not be unreasonably withheld. In the event that Tenant wishes to sublease the Premises, Tenant shall, in connection with its request for Landlord's consent, provide Landlord with a copy of any such proposed sublease, copies of all related financial and credit information regarding the proposed sublessee and copies of any and all additional information reasonably requested by Landlord; provided, however, that Tenant may redact the rental figures from any such copy of the sublease. The foregoing notwithstanding, the Landlord will permit the sublease of the Premises to a corporation owned entirely by, or under the sole control of, the Tenant.

The Tenant agrees that the value of the Premises and the reputation of the Landlord and Overlandlord will be seriously injured if the Premises are used for obscene or pornographic purposes or any sort of commercial sex establishment. The Tenant agrees that Tenant will not bring or. permit any obscene or pornographic material on the Premises, and shall not permit or

52

conduct any obscene, nude, or semi-nude live performances on the Premises, nor permit use of the Premises for nude modeling, rap sessions, or as a so-called rubber goods shop or as a sex club of any sort or as a "massage parlor". The Tenant agrees further that the Tenant will not permit any of these uses by any sublessee or assignee of the Premises. This Article shall directly bind any successors in interest to the Tenant. Tenant agrees that if at any time Tenant violates any of the provisions of this Article, such violation shall be deemed a breach of a substantial obligation of the terms of this lease and objectionable conduct. Pornographic material is defined for purposes of this Article as any written or pictorial matter with prurient appeal or any objects or instruments that are primarily or materially concerned with lewd or prurient sexual activity.

Notwithstanding any subletting or assignment, Tenant shall remain liable for the performance of all the terms, covenants and conditions of this lease. In addition, no such assignment or sublease will relieve any guarantor of this lease from any liability under such guaranty..

## REPAIRS

ART. 12. Tenant shall, at its own cost and expense, keep and maintain the Premises and appurtenances thereto and every part thereof, in good order and repair except portions of the Premises to be repaired by Landlord, pursuant to this Article 12. Without limiting the foregoing, Tenant agrees to keep all interior fixtures, plumbing, walls and lighting in good order and repair, and Tenant shall be liable for any damage to such systems. Tenant agrees to return the Premises to Landlord at the expiration or sooner termination of this lease in as good condition and repair as when first received, reasonable wear and tear, and damage by fire or other insurable casualty excepted. All damage or injury to the Premises or the building, or the common area, caused by the act of negligence of Tenant, his agents, employees, licensees, invites or by visitors shall be promptly repaired by Tenant, at its sole cost and expense and to the satisfaction of Landlord. Landlord may make such repairs which are not promptly made by Tenant and charge Tenant for the cost thereof and Tenant hereby agrees to pay such amounts on demand as additional rent hereunder. Tenant shall have no right to make repairs at the expense of Landlord, or to deduct the cost thereof from the rent due hereunder.

The Landlord agrees to maintain and pay for (a) all repairs, structural or otherwise, to the exterior of the Premises, identified as being exterior walls, rooftop HVAC equipment, parking lot, curbs, sidewalks and alleys.

Notwithstanding the above, the Tenant agrees to make and pay for interior or exterior repairs resulting from alterations or improvements made to the Premises by Tenant.

## DAMAGE BY FIRE

ART. 13.   The Tenant agrees that if the building for the Premises or the building of which the Premises are a part is damaged or destroyed by fire or through any other cause, to immediately notify the Landlord of such damage or destruction.

In the event the Landlord does not exercise its option to cancel and terminate this Lease as herein provided, the Landlord agrees to take appropriate action to require the Overlandlord to comply with the provisions of ART. 13 of said Overlease at Overlandlord's own cost and expense and there shall be an abatement of rent during the same period and in the same proportion as the abatement of rent realized by the Landlord pursuant to the provision of ART. 13 of the Overlease.

It is specifically understood that the Landlord shall have no obligation whatsoever to restore the building for the Premises or the building of which the Premises are a part and that the Landlord's obligations in this respect are restricted solely to taking the appropriate action referred to in the preceding paragraph of this ART. 13. Furthermore, notwithstanding anything in this ART. 13 to the contrary withstanding, the Landlord may, in the event that Landlord determines, in its sole discretion, that the cost of restoring or repairing any such damages are material, terminate this lease by giving written notice to Tenant, in which event the lease will terminate and neither party will have any further liability to one another under this lease.

Furthermore, Tenant agrees that in the event of damage or destruction by fire or other cause of Tenant's leasehold improvements, Landlord shall have no obligation to repair or restore said leasehold improvements and Tenant agrees to maintain insurance coverage on such leasehold improvements and to repair or restore same in the event of damage by fire or other cause.

## INDEMNITY

ART. 14.   The Tenant during the term hereof shall indemnify and save the Landlord and the Premises free and harmless from and against any and all claims and demands whether for injuries to persons and/or loss of life, or damage to property, arising out of the use and occupancy of the Premises by the Tenant or by any person or persons holding under the Tenant, excepting however such claims and demands whether for injuries to persons or loss of life or damage to property caused by acts or omissions of the Landlord.

The Landlord during the term hereof shall indemnify and save harmless the Tenant and its licensees from and against any and all claims and demands whether for injuries to persons or loss of life or damage to property, arising out of acts or omissions of the Landlord.   .

The Tenant agrees that it will obtain and maintain in full force and effect

54

throughout the term of this lease, public liability insurance with limits of not less than $2,000,000.00 with respect to personal injuries and loss of life, and $500,000 with respect to property damage, all such policies to contain an endorsement insuring the Tenant's contractual liability to the Landlord as set forth in the preceding paragraphs and an endorsement waiving the insurer's right of subrogation against the Landlord. The Tenant further agrees that it shall deliver to the Landlord a certificate of the insuring company certifying the above described insurance is in full force and effect prior to the commencement date of this lease and thereafter on an annual basis no later than January 15 of each year of the term.

## REGULATIONS

ART. 15.    If any federal, state or municipal government or any department or division thereof shall condemn the Premises or any part thereof as unsafe or as not in conformity with the laws and regulations relating to the use, occupation and construction thereof, or has ordered or required or shall hereafter order or require any rebuilding, alteration or repair thereof or installations therein, Landlord agrees to take appropriate action when so requested by the Tenant in writing to require the Overlandlord at the Overlandlord's own cost and expense to rebuild or make such alterations, installations and repairs as may be necessary to comply with such laws, orders or requirements. If by reason of such laws, orders or requirements or work done by the Overlandlord in connection therewith, the Tenant or its licensees are deprived of the use of the Premises, Tenant's rent shall abate during the same period and in the same proportion as the abatement of rent realized by Landlord pursuant to the provisions of ART. 15 of the Overlease. If, however, such condemnation, order or request as in this Article set forth shall be the result of some unusual use of the Premises by the Tenant or its licensees, the Tenant shall comply with such order or requirement within the Premises at its own cost and expense and no abatement of rent shall be granted.

## EMINENT DOMAIN

ART. 16.    In the event all of the Premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, this lease shall terminate and expire as of the date of such taking and the Landlord and Tenant shall thereupon be released from any further liability hereunder otherwise arising from and after the date of such taking.

In the event part of the Premises shall be appropriated or taken under the power of eminent domain by any public or quasi-public authority, the Tenant shall have the right to cancel and terminate this lease as of the date of such taking upon giving to the Landlord notice in writing of such election within twenty (20) days after the receipt by the Tenant from the Landlord of written notice that said Premises have been so appropriated or taken. In the event of such cancellation the Tenant shall thereupon be released from any further liability under this lease. The Landlord agrees immediately after any appropriation or

55

taking to give to the Tenant notice in writing thereof.

If a portion of the Premises shall have been appropriated or taken and if this lease shall continue, then in that event, the Landlord agrees to take appropriate action when so requested by the Tenant in writing to require the Overlandlord at the Overlandlord's own cost and expense, to immediately restore the building on the land remaining to a complete unit of like quality and character as existed prior to such appropriation or taking. Tenant's rent shall abate during the same period and in the same proportion as the abatement of rent realized by Landlord pursuant to the provisions of Art. 16 of the Overlease.

## DEFAULT

ART. 17. · Each of the following shall be deemed a default and a breach of this lease: (a) the filing of a petition by or against the Tenant for adjudication as a bankrupt or insolvent; (b) the undertaking of any action for the dissolution or liquidation of the Tenant, whether instituted by or against the Tenant; (c) the making by the Tenant of an assignment for the benefit of creditors; (d) abandonment of the Premises and a failure to maintain and repair the Premises as required by this lease; (e) failure to perform any covenant (except the covenant concerning the payment of rent) or condition of this lease on the part of the Tenant to be performed and if such default continues for a period of thirty (30) days after notice in writing of the existence of such default shall be given by the Landlord to the Tenant; (f) failure by the Tenant to pay within five (5) days after written demand by Landlord, any rent or other sum or sums ascertainable and payable to the Landlord under the terms of this lease; (g) passage of this lease by operation of law to any person or persons other than the Tenant; (h) appointment of a receiver or trustee for the Tenant's property if such receiver or trustee shall not be discharged within thirty (30) days after his appointment.

## NOTICE OF TERMINATION

ART. 18. In the event of any such default on the part of the Tenant, this lease may be terminated by the Landlord at any time thereafter by giving to the Tenant not less than five (5) days notice in writing of its intention to terminate this lease. Upon the date specified in such notice of termination, this lease and the term hereof shall expire and come to an end in the same manner and to the same extent as if such date were the date herein provided for the expiration of the term of this lease. Such right of termination shall be in addition to any other rights and remedies of the Landlord under the provisions of this lease or otherwise available to Landlord under applicable law. An election by Landlord to pursue any one or more right or remedy shall not constitute an election by Landlord to pursue such remedy to the exclusion of, or as a waiver of the right to pursue, any other right or remedy.

If the basis of such notice shall be solely the failure of the Tenant to make repairs, alterations or changes in or to the Premises, and if within the thirty (30)

day period specified by ART. 17 (e) hereof, the Tenant shall have commenced but shall not have completed such repairs, alterations or changes, the Landlord will not, while the Tenant is diligently engaged in making said repairs, alterations or changes, give to the Tenant notice terminating this lease, as provided for in this Article, unless Tenant's default may result in the termination of the Overlease or subject the Landlord to a fine or penalty.

## RIGHT OF ENTRY

ART. 19.    In the event of a default on the part of the Tenant pursuant to the provisions of ART. 17 hereof, the Landlord or its agent, servants or representatives, may immediately or at any time thereafter, re-enter the Premises by force, summary proceedings, or otherwise and receive possession of said Premises and remove all persons and property therefrom, without being liable for prosecution therefor, and the Tenant hereby expressly waives the service of any notice in writing of intention to re-enter. No re-entry by the Landlord shall be deemed an acceptance of a surrender of this lease.

## RELETTING AFTER TENANT'S DEFAULT

ART. 20.    In the event of a default on the part of the Tenant, the Tenant agrees that in addition to any other rights and remedies of the Landlord under the provisions of this lease, the Landlord may, but shall not be required to do so, relet the Premises or any part thereof (with or without terminating this lease and/or taking possession of said Premises by court action or otherwise) either in the name of the Landlord or otherwise, at such rent as it may deem reasonable and for a term which may, in the discretion of the Landlord, extend beyond the term of this lease, and in connection with such reletting may alter and change the Premises to the extent which may be necessary to suit the needs and requirements of the new tenant, and the Tenant expressly agrees to pay as liquidated damage for the breach of the covenants contained in this lease an amount not to exceed the differences between the rent reserved and the rent collected and received, if any, by the Landlord (less all expenses of every kind of the Landlord in connection with altering, repairing and reletting the Premises) during the remainder of the term of this lease. Such difference or deficiency between the rent herein reserved and the rent collected shall be due and payable in monthly payments during the term of this lease as the amount of such difference or deficiency shall from time to time be ascertained.

## NOTICES

ART. 21.    Wherever in this lease it shall be required or permitted that notice or demand be given or served by either party to this lease to or on the other, such notice or demand shall be given and served and shall not be deemed to have been duly given and served unless in writing and forwarded by certified mail, and addressed as follows:

TO THE LANDLORD
8100 AMF Drive

Mechanicsville, VA 23111
Attention: Vice-President - Real Estate

TO THE TENANT:
Samuel Panchevre
16 Carriage Hills
San Antonio, Texas 78257

Such address may be changed from time to time by either party by serving notices as above provided.

## WAIVER

ART. 22. No defaults shall be deemed waived unless in writing signed by the Landlord.

The failure of the Landlord to insist upon a strict performance of any of the terms, covenants and conditions herein, shall not be deemed a waiver of any rights or remedies that the Landlord may have, and shall not be deemed a waiver of a subsequent breach or default in the terms, covenants and conditions herein contained. This instrument may not be changed, modified or discharged orally.

## GENERAL PROVISIONS

ART. 23. This lease is and shall be considered to be the only agreement between the parties hereto. All negotiations and oral agreements acceptable to both parties are included herein.

It is further agreed between the parties hereto that the signing of this lease by the Tenant does not constitute a complete transaction until such time as this lease shall have been accepted by the Landlord, and executed by its proper officers.

The captions of this lease are for convenience only and are not a part of this lease and do not in any way limit or amplify the terms and provisions of this lease.

If more than one person or corporation is named as Tenant in this lease and executes the same as such, then and in such event, the word "Tenant" wherever used in this lease, is intended to refer to all such persons or corporations, and the liability of such persons or corporations for compliance with and performance of all of the terms, covenants and provisions of this lease shall be joint and several.

The Landlord and Tenant agree that all the provisions hereof are to be construed as covenants and agreements as though the words importing such ·

58

covenants and agreements were used in each separate paragraph hereof, and that all of the provisions hereof shall bind and inure to the benefit of the parties hereto, and their respective heirs, legal representatives, successors and assigns.

The Tenant agrees that under all circumstances where the Overlandlord shall be required to perform any obligation under the Overlease and the Landlord has agreed in this lease to take appropriate action to require the Overlandlord so to do, the Landlord shall be entitled to a reasonable time within which to require the Overlandlord to perform such obligation.

No diminution or abatement of rent, or other compensation, shall be claimed or allowed for inconvenience, discomfort or interruption of business arising from the making of repairs or improvements to the building or for any space taken to comply with any law, ordinance or order of a governmental authority, except as elsewhere herein specifically provided.

The Tenant waives all rights to redeem under any law of the State of Texas which is now in effect or may hereafter be enacted or enforced.

The rights given to the Landlord herein are in addition to any rights that may be given to the Landlord by any statute or otherwise.

The Tenant agrees that the Landlord and its agents and employees may during reasonable business hours enter into and upon the Premises for the purpose of inspecting same, or for the purpose of sale or within six (6) months prior to the expiration of the term hereof or any extension thereof for the purpose of rental. During the six (6) months prior to the expiration of the term hereof, the Tenant agrees that the usual notices "For Sale" and "To Let" may be placed and remain unmolested in a conspicuous place upon the exterior of the Premises.

Anything in this lease to the contrary notwithstanding, the Tenant agrees that it will not use, suffer or permit to be used, the Premises or any part thereof in violation of any restrictions affecting the Premises and now in force.

The Landlord shall not be liable for any failure of water supply or electric current, nor for injury or damage to person or property caused by or resulting from steam, gas, electric, water, rain or snow, which may leak or flow from any part of the building on the Premises or the building of which the Premises are a part, or from pipes, appliances or plumbing work of the same, or from the street or sub-surface or from any other place, nor for interference with light or other than the Landlord, or caused by operations by or for any governmental or quasi-governmental authority in construction of any public or quasi-public work; the Landlord shall not be liable for any latent defect in said building.

MECHANIC'S LIEN

ART. 24.    The Landlord shall not be liable for any labor or materials furnished to the Tenant and no mechanic's or others lien for such labor and

59

materials shall attach to or affect the Premises or the interest of the Landlord therein. Whenever and as often as any such lien shall have been filed against the Premises, the Tenant shall forthwith remove or satisfy the same by bonding, deposit or payment and in default thereof for ten (10) days after notice to the Tenant, the Landlord may pay the amount of such mechanic's lien or discharge the same by bond or deposit and the amount so paid or deposited together with interest at the rate of twelve (12%) percent per annum shall be deemed additional rent due hereunder and payable on the date when the next installment of rent shall become due.

## COMMON FACILITIES

ART. 25.    The license given hereunder to Tenant to use the Common Facilities hereinabove described shall not be deemed to grant or convey to Tenant any rights, easements or interest (other than a bare license to use) said Common Facilities.

Landlord agrees to take appropriate action when so requested by the Tenant in writing to require the Overlandlord to maintain all of said Common Facilities in good and usable condition, free and clear of ice, snow and debris and adequately lighted at all times when Tenant is open for business, without any charge or cost for such use by Tenant.

## REAL ESTATE COMMISSIONS

ART. 26.    Landlord and Tenant each hereby represent, acknowledge and agree that it has dealt with no person or party in connection with this lease and neither of them owes any person or party any rental commissions, broker fees or related fees arising out of the negotiation or consummation of this lease. Tenant hereby indemnifies and holds Landlord harmless from any claims relating to any incorrectness or inaccuracy in the representation made by Tenant in the preceding sentence and Landlord hereby indemnifies and holds Tenant harmless from any claims relating to any incorrectness or inaccuracy in the representation made by Landlord in the preceding sentence.

## OCCUPANCY AND RENTAL TAXES

ART. 27.    Tenant hereby agrees to pay all excise, sales, use, transaction or privilege taxes or similar taxes however named, which may be levied, whether against Landlord, Overlandlord or Tenant, by any government or governmental agency upon the rental payable under this lease, Tenant's occupancy of the Premises or the privilege of Tenant to conduct business in the Premises.

## REAL ESTATE TAXES

ART. 28.    Landlord shall be responsible for all payments regarding real estate taxes for the Premises.

## SIGNS

ART. 29.     Tenant will not place or suffer to be placed or maintained on any exterior door, wall or window of the Premises any sign, awning or canopy of advertising matter or other thing of any kind, and will not place or maintain any decoration, lettering or advertising matter on the glass of any window or door of the Premises without first obtaining Landlord's prior written approval and consent in each instance.  Tenant further agrees to maintain any such sign, awning canopy, decoration, lettering and advertising matter in good condition at all times.  Good condition as herein used shall include, without limitation, painting, replacing lighting and such repairs and improvements as shall meet Landlord's specifications. All signs shall be subject to Landlord's approval and Landlord agrees that said approval shall not be unreasonably withheld. Tenant, at Tenant's sole expense, shall be allowed to place and maintain a lighted sign on the pylon sign for the center, subject to the provisions above, with no additional charges for said privilege.

## CONTINGENCIES

ART. 30.     Landlord's and Tenant's obligations under this lease agreement shall be contingent on the Tenant securing all business and liquor licenses by January 1, 2006.  Should Tenant not secure said licenses, then Tenant shall have the unilateral right to terminate the Sublease and Landlord shall then return Tenant's Security Deposit and the December rent payment.

## SECURITY DEPOSIT

ART. 31.     No later than the date this lease is executed, Tenant shall deliver to Landlord a security deposit (the "Security Deposit") in the amount of
                                                                              'as security for the full and faithful performance of every provision of this lease to be performed by Tenant. The payment of the security deposit shall be in addition to the advance payment of the December 2005 rental paid on the date this lease is executed. If Tenant defaults with respect to any provisions of this lease, Landlord in its sole discretion may elect to use, apply or retain all or any part of the Security Deposit for the payment of any rent or any other sum in default, or for the payment of any other amount which Landlord may spend or become obligated to spend by reason of Tenant's default or to compensate Landlord for any other loss or damage which Landlord may suffer by reason of Tenant's default. Said Security Deposit shall be in the form of cash; Landlord shall not be liable to Tenant for interest accruing to or earned by such deposit. If Tenant shall fully and faithfully perform each provision of this lease to be performed by it, the Security Deposit or any unused balance thereof shall be returned to Tenant at the expiration of the lease term and upon Tenant's vacating the Premises. Providing Tenant has

not defaulted on any of the lease terms, of the Security Deposit shall be applied to December's 2008 monthly rent payment resulting in a new Security Deposit balance of:

## RENEWAL OPTION

ART. 32. Provided Tenant is not in default on any of the term nd conditions of this lease at the expiration of the original term of the lease, Landlord hereby grants Tenant the option to renew this agreement for two (2) option periods. The first option period for a three (3) year period (October 1, 2008 through September 30, 2011) under the same terms and conditions as contained herein, except that the monthly rental amount shall be at. per month for the first year of the option, per month for the second option year, and per month for the third option year. The second option period for a two (2) year eight (8) month period (October 1, 2011 through May 31, 2014) under the same terms and conditions as contained herein, except that the monthly rental amount shall be at per month for the first year of the option, per month for the second option year, and : per month for final months of said option year Tenant shall notify Landlord by certified signed receipt mail no later than 6 months prior to the expiration of the then present lease term of the Tenant's intent to exercise the option.

## LANDLORD FIXTURES AND EQUIPMENT

ART. 33. Exhibit "C", attached hereto, contains a complete list of all fixtures and equipment that are the sole property of the Landlord and shall be left for Tenant's use during the term of this lease. All items are delivered in "as is" condition without warranty from Landlord and are accepted and received by Tenant in that condition and shall be returned to Landlord in good working order upon lease termination. Tenant shall be responsible for all equipment maintenance during the term of this lease.

IN WITNESS WHEREOF, the Landlord and Tenant have duly executed and affixed their respective seals to this sublease on the day and year first above-written.

AMF BOWLING CENTERS , INC.              METROPOLIS, INC.

BY: _____            BY: _____

ITS: _Vice President, Real Estate_ITS: _____

STATE OF _Texas_

CITY/COUNTY OF _Bexar_

On the 17th day of _October_, 2005, before me a Notary Public in and for the aforesaid jurisdiction, the undersigned officer, personally appeared _Gilray Butheu_, who acknowledged himself to be the _Vice-president_ of Metropolis, Inc., a _Texas_ corporation, and that he as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as _President_.

In witness whereof, I hereunto set my hand and official seal.

_Carmen B. Viera_
Notary Public

My commission expires: 4-30-09

CARMEN G. VIERA
Notary Public
State of Texas
My Comm. Exp. 04-30-2009

STATE OF VIRGINIA

COUNTY OF HANOVER

On the 18th day of _October_, 2005, before me a Notary Public in and for the aforesaid jurisdiction, the undersigned officer, personally appeared Mark S. Hatcher, who acknowledged himself to be the Vice President of Real Estate of AMF Bowling Centers, Inc., a Virginia corporation, and that he as such officer, being authorized to do so, executed the foregoing instrument for the purposes therein contained by signing the name of the corporation by himself as Vice President of Real Estate.

In witness whereof, I hereunto set my hand and official seal.

Notary Public

My commission expires: 4/30/06.

63



Exhibit A

WOOLCO

64



EXHIBIT "A"

MID LOOP ROAD

WOOLCO

EXHIBIT "C"

LANDLORD:     AMF BOWLING CENTERS, INC.

TENANT:       JYE YMAS, LLC

LOCATION:     13307-A SAN PEDRO AVE.
              SAN ANTONIO, TEXAS

## LANDLORD FIXTURES AND EQUIPMENT:

1.   Approx. 6' x 12' combination walk-in freezer/refrigerator;

2.   Large kitchen vent hood with ANSUL SYSTEM;

3.   Fifty (50) gallon electric hot water heater.

#582724 v2    015832.02927

66

# APPENDIX G

## SUBLEASE AGREEMENT

This SUBLEASE AGREEMENT (this "Sublease") is entered into on March 6, 2007 (the "Effective Date"), by and between Metropolis, Inc., a Texas corporation whose address is 16 Carriage Hills, San Antonio, Texas 78257 ("Sublessor"), and Rio Ventures, Ltd., a Texas limited partnership whose address is 1406 Peacock Haven, San Antonio, Texas 78256 ("Sublessee").

1.    **Demise and Description of Property:**

Sublessor leases to Sublessee, and Sublessee leases from Sublessor, the premises the "Subleased Premises" or the "Premises") located at 13307 San Pedro Avenue, Suite A, San Antonio, Bexar County, Texas 78216.

2.    **Term:**

The term of this Sublease (the "Sublease Term") shall commence on February 1, 2007 (the "Sublease Commencement Date"), and end on May 31, 2014 (the "Sublease Termination Date"). But this Sublease will terminate earlier in the event of a termination of the Sublease Agreement dated October 14, 2005 (the "Base Lease"), between AMF Bowling Centers, Inc., a Delaware corporation, as Landlord, and Sublessor, as Tenant, leasing the Premises.

3.    **Rent:**

During the term of this Sublease, Sublessee will pay Sublessor the same monthly rental for the Premises provided in the Main Lease, plus the sum of Two Thousand and No/100 Dollars ($2,000.00).

4.    **Use of Premises:**

Sublessee will use the Premises only for the use permitted under the Base Lease (the "Permitted Sublease Use").

5.    **Assumption Agreement and Covenants:**

(a)    Sublessee will comply with all of the provisions of the Base Lease that are to be performed by the Sublessor as Tenant during the term of this Sublease.

(b)    If the Base Lease is canceled or terminated before its expiration date and before the expiration date and before the expiration date of this Sublease or any extensions and renewals, or if the Base Lease is surrendered, whether voluntarily, involuntarily, or by operation of law, Sublessee will make full attornment to the Landlord for the balance of the term of this Sublease, including any extensions and renewals, based on the same covenants and conditions of this Sublease, so as to establish direct privity of estate and contract between the Landlord and Sublessee, with the same force as though this Sublease was originally made directly from the

1

Landlord to Sublessee. Landlord will then become the Landlord under this Sublease.

(c)     The provisions of the Base Lease, to the extent that they do not conflict with specific provisions of this Sublease, are fully incorporated into this Sublease. Sublessee agrees to be bound to Sublessor by the Base Lease and to assume toward Sublessor the same role and perform all of the obligations and responsibilities that Sublessor by the Base Lease assumes toward Landlord. The relationship between Sublessee and Sublessor under this Sublease is the same as that between Sublessor and Landlord under the Base Lease.

6.     Sublessee agrees to:

(a)     Sublease the Subleased Premises for the Sublease Term beginning on the Sublease Commencement Date and ending on the Sublease Termination Date.

(b)     Pay the Sublease Rent to Sublessor in advance of the first (1st) day of each month.

(c)     Vacate the Subleased Premises and return all keys to the Subleased Premises on the termination of this Sublease.

(d)     Indemnify, defend, and hold Sublessor harmless from and against any loss, reasonable attorney's fees, court and other costs, or claims arising out of use of the Subleased Premises or resulting from Sublessee's failure to comply with the Base Lease.

(e)     Maintain public liability insurance, with Sublessor named as an additional insured, in the amounts and for the purposes stated in the Base Lease.

(f)     Deliver certificates of insurance to Sublessor before the Sublease Commencement Date and thereafter on an annual basis.

7.     Sublessee agrees not to:

(a)     Use the Subleased Premises for any purpose other than the Permitted Sublease Use.

(b)     Create a nuisance.

(c)     Interfere with any other tenant's normal business operations or Landlord's management of the building where the Premises are located.

(d)     Permit any waste.

(e)·    Use the Subleased Premises in any way that is extrahazardous, would increase insurance premiums, or would void insurance on the building where the Premises are located.

(f)     Allow a lien to be placed on the Subleased Premises.

2

74

8.    Sublessor agrees to:

(a)    Permit and authorize Sublessee to assign this Sublease or sublease any portion of the Subleased Premises in accordance with the terms of Article 11 of the Base Lease, provided Sublessee is not in default on any of the terms and conditions of this Sublease beyond any cure period and so long as the entire unpaid principal balance of the Promissory Note of even date hereof in the principal sum of One Hundred Seventy Five and No/100 Dollars ($175,000.00) between Sublessor, as payee, and Sublessee, as maker, is paid in full.

(b)    Sublease the Subleased Premises to Sublessee for the Sublease Term.

(c)    Comply with Tenant's obligations under the Base Lease.

(d)    Enforce Landlord's obligations under the Base Lease.

(e)    Make available to the Subleased Premises all services and rights provided under the Base Lease.

9.    Sublessor and Sublessee agree to the following:

(a)    Defaults by Sublessee are (i) failing to pay timely the Sublease Rent, (ii) abandoning or vacating a substantial portion of the Subleased Premises, and (iii) failing to comply within thirty (30) days after written notice with any material provision of the Base Lease or Sublease other than the defaults set forth in (i) or (ii) above.

(b)    Sublessor's remedies for Sublessee's default are to (i) enter and take possession of the Subleased Premises, after which Sublessor may relet the Subleased Premises on behalf of Sublessee and receive the Sublease Rent directly by reason of the reletting, and Sublessee agrees to reimburse Sublessor for any reasonable expenditures made in order to relet; (ii) enter the Subleased Premises and perform Sublessee's obligations; and (iii) terminate this Sublease by written notice and sue for damages.

(c)    Sublessee's remedy for Sublessor's default is to sue for damages.

(d)    This Sublease is subordinate to the Base Lease, a copy of which Sublessee acknowledges as received.

(e)    Sublessor may retain, destroy, or dispose of any property left in the Subleased Premises after the expiration of thirty (30) days of the end of the Sublease Term.

(f)    Sublessor has all the rights of Landlord under the Base Lease as to Sublessee.

(g)    If either party retains an attorney to enforce this Sublease, the party prevailing in litigation is entitled to recover reasonable attorney's fees and court and other costs.

3

10.    **Base Rent Adjustment.**    Pursuant to the Base Lease.

11.    **Advertisement of Premises.** During the last thirty (30) days of the Sublease Term, Sublessor may place a sign on the Premises advertising the Premises for rent or sale.

12.    **Renewal Option.**    Provided Sublessee is not in default on any of the terms and conditions of this Sublease beyond any cure period, Sublessee shall notify Sublessor in writing no later than seven (7) months prior to the expiration of the then present lease term under the Base Lease of Sublessee's desire to have Sublessor exercise the renewal option granted under Article 32 of the Base Lease, and Sublessor shall be required to exercise such option, and the Sublease shall continue in full force and effect for the term of the renewal option.

13.    **Asbestos.** Buildings or structures located on the Premises may contain asbestos-containing material or presumed asbestos-containing material as defined by OSHA regulations. Sublessee has inspected the Premises and conducted such tests and inspections as Sublessee deems necessary or desirable. Sublessee will provide Sublessor with copies of all such test results and inspections. Sublessee will comply with all rules and regulations relating to asbestos in performing any maintenance, housekeeping, construction, renovation, or remodeling of the Premises, and Sublessee will bear all costs related to removal and disposal of asbestos from the Premises, only and so long as such asbestos were directly and solely installed by Sublessee.

14.    **Security Deposit.** Sublessee hereby agrees to pay to Sublessor a Security Deposit in the amount of Ten Thousand and No/100 Dollars ($10,000.00) which shall be subject to and governed by the terms and conditions of Article 31 of the Base Lease.

15.    **Furniture and Fixtures.** All furniture and fixtures and equipment placed in the Premises by Sublessee will remain Sublessess's property, subject to Sublessor's rights as provided by law. Sublessee may, when this Sublease expires, remove the furniture and fixtures if removal is done so as not to damage the Premises.

16.    **Texas Law To Apply.** This Sublease will be construed under Texas law, and all obligations of the parties are performable in Bexar County, Texas.

17.    **Parties Bound.** This Sublease will bind and inure to the benefit of the parties hereto and their respective heirs, executors, administrators, legal representatives, successors, and assigns except as this Sublease otherwise specifies.

18.    **Legal Construction.** If any one or more of the provisions of this Sublease is for any reason held invalid, illegal, or unenforceable in any respect, that invalidity, illegality, or unenforceability will not affect any other provision of this Sublease, which will be construed as if it had never included the invalid, illegal, or unenforceable provision.

19.    **Prior Agreements Superseded.**    This Sublease constitutes the sole agreement of the parties hereto and supersedes any prior understandings or written or oral agreements between the parties hereto respecting the subject matter.

4

76

20. **Notice.** Unless this Sublease provides otherwise, any notice, tender, or delivery to be given by either party to the other may be effected by personal delivery in writing or by registered or certified mail, postage prepaid, return receipt requested, and will be considered received as of the actual mailing.

21. **Capitalized Terms.** All capitalized terms not defined in this Sublease shall have the meaning assigned to them in the Base Lease.

[SIGNATURES ON THE NEXT PAGE]

5

IN WITNESS WHEREOF, the parties hereto have duly executed this Sublease as of the Effective Date.

SUBLESSOR:

METROPOLIS, INC.

By: _____

Name: _____

Title: _____

SUBLESSEE:

RIO VENTURES, LTD.

By:    Rio Club, LLC, its General Partner

By: _____

Name: _____

Title: _____

6

# APPENDIX H

CAUSE NO. 2014-CI-19987

| | | |
|---|---|---|
| AMF BOWLING CENTERS, INC., | § | IN THE DISTRICT COURT |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 408TH JUDICIAL DISTRICT |
| | § | |
| METROPOLIS, INC., | § | |
| RIO VENTURES, LTD., | § | |
| and RIO CLUB, L.L.C., | § | |
| | § | |
| Defendants. | § | BEXAR COUNTY, TEXAS |

### ORDER GRANTING
### METROPOLIS NIGHTCLUBS I, LP'S MOTION FOR
### PARTIAL SUMMARY JUDGMENT AND DECLARATORY RELIEF

On ~~June~~ July 09, 2015, Metropolis Nightclubs I, LP presented it Motion for Partial Summary Judgment and Declaratory Relief (the "Motion") to the Court. Upon due consideration of the Motion, the evidence presented at the hearing, the applicable legal authorities, and the arguments of counsel, the Court finds that the relief requested should be GRANTED.

IT IS THEREFORE, ORDERED that

(a) Metropolis Nightclubs I, L.P. is the proper name of the tenant to the Lease for the Premises with AMF Bowling Centers, Inc. dated October 14, 2005;

(b) Metropolis Nightclubs I, L.P. is the proper name of the sublessor for the Premises to the Sublease with Rio Ventures, Ltd. dated March 6, 2007;

(c) Metropolis Nightclubs I, L.P. is the proper name of the tenant for the Premises to the Metropolis Extension with AMF Bowling Centers, Inc. dated April 30, 2014;

(d) Metropolis Nightclubs I, L.P. is the proper name of the sublessor for the Premises to the Rio Ventures Extension with Rio Ventures, Ltd. dated April 30, 2014;



**EXHIBIT**

5

(e) The misnomer of Metropolis Nightclubs I, L.P. on the Lease, Sublease, Metropolis Extension, and Rio Ventures Extension does not impact the validity or enforceability of the Lease, Sublease, Metropolis Extension, and Rio Ventures Extension;

(f) The Agreed Final Judgment entered in *AMF Bowling Centers, Inc. v. Metropolis, Inc.*, Cause No. 2015-01499, 190th Judicial District Court, Harris County, Texas does not have any impact or effect on the rights of Metropolis and Club Rio to the Premises; and

(g) Metropolis Nightclubs I, L.P. be awarded its reasonable and necessary attorney's fees to present this Motion, and be granted such further and other relief to which Metropolis Nightclubs I, L.P. may be justly entitled at law or in equity.

Signed July 09, 2015.

Stephani A Walsh

JUDGE PRESIDING

# APPENDIX I



Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697

Carlos H. Cascos
Secretary of State

## Office of the Secretary of State

### Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that the document, Articles of Incorporation for Metropolis Nightclubs, Inc. (file number 800563621), a Domestic For-Profit Corporation, was filed in this office on October 27, 2005.

It is further certified that the entity status in Texas is in existence.

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on June 03, 2015.



Carlos H. Cascos
Secretary of State

Come visit us on the internet at http://www.sos.state.tx.us/

Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB                    TID: 10264                    Document: 609656090003

730

Corporations Section
P.O.Box 13697
Austin, Texas 78711-3697



Carlos H. Cascos
Secretary of State

# Office of the Secretary of State

### Certificate of Fact

The undersigned, as Secretary of State of Texas, does hereby certify that the document, Certificate of Limited Partnership for Metropolis Nightclubs I, L.P. (file number 800563626), a Domestic Limited Partnership (LP), was filed in this office on October 27, 2005.

It is further certified that the entity status in Texas is in existence.

In testimony whereof, I have hereunto signed my name officially and caused to be impressed hereon the Seal of State at my office in Austin, Texas on June 03, 2015.



Carlos H. Cascos
Secretary of State

Come visit us on the internet at http://www.sos.state.tx.us/
Phone: (512) 463-5555          Fax: (512) 463-5709          Dial: 7-1-1 for Relay Services
Prepared by: SOS-WEB           TID: 10264                   Document: 609656090003

731